# NELSON BAKER *vs.* The Lessee of JOHN SWAN and others.

## *Evidence — Color of Title — Adverse Possession by Color of Title — Adverse Possession.*

It is the duty of a party offering evidence, not appearing of itself to be relevant, to accompany it with a proffer to follow it with such other proof as will make its relevancy appear; and if he fail to do this, the Court may properly reject the evidence offered.

Color of title is such title as in appearance is good and sufficient, but which in reality is not good and effectual. The paper title, to give color, must be so far *prima facie* good in appearance as to be consistent with the idea of good faith on the part of the person entering under it; the enquiry being, whether there existed such an apparent or colorable title, under which claim and entry could have been made in good faith; the party believing his title to be good, and his claim well founded. If such color and good faith do not exist, the party's *seisin* must be confined to his actual possession, which, before the Act of 1852, ch. 177, must have been clearly indicated by enclosures.

Adverse possession, by color of title, is made out by the co-existence of two distinct ingredients—the first, such a title as will afford color; and, secondly, such possession under it as will be adverse to the right of the true owner; and whether these two essentials exist, are, in all cases, questions of law, to be determined by the Court, though the facts upon which they are founded, are for the finding of the jury.

A land office warrant, issued by the State of Virginia, and a patent granted thereon, for land described as and declared to be located within that State, and a deed from the patentee for the same land, are simply void as to titles to lands within the limits of this State, and cannot be allowed to have the effect even of giving color of title to a party who would otherwise be in the predicament of a mere trespasser.

Possession, to be adverse, must appear to have been actual, hostile, visible, notorious, exclusive and continuous for at least twenty years before suit brought, in order to form a bar to the assertion of the legal title by the owner; and if these characteristics are not shown, or proof offered from which they may be inferred to exist, the evidence is legally insufficient.

If a party claim title to land by possession thereof, in the same manner as it had been held by his predecessor, the imperfect possession of the latter cannot, when united to his own, make it continuous and exclusive, as against the real owner.

APPEAL from the Circuit Court for Allegany County.

The cause was argued before BARTOL, C. J., STEWART, BRENT, MILLER and ALVEY, J.

*Thomas J. McKaig,* for the appellant.

*J. H. Gordon,* for the appellees.

ALVEY, J., delivered the opinion of the Court.

This was an action of ejectment brought by the appellees against the appellant, for a tract of land in Allegany county, called "Skipwith," and which was patented to Gen'l John Swan, by the State, in 1803.

The appellees claim under the title of Gen'l Swan, and succeeded in asserting that title in the trial below as against the appellant, the tenant in possession, who relied alone upon adversary possession to defeat the right of the appellees.

The appellant pleaded not guilty, and took defence on warrant; and in the execution of the warrant various locations were made under instructions of the respective parties.

At the trial four bills of exceptions were taken by the appellant to the exclusion of evidence offered by him; and by the first of which it appears that the *prima facie* paper title of the appellees being admitted, they then proved the location of "Skipwith," and rested their case without giving any proof of possession by themselves, or of those under whom they claimed. Thereupon the appellant offered to prove, by a competent witness, that the actual location of the line dividing the States of Maryland and Virginia, from the source of the river Potomac to the Pennsylvania line, near which the land in controversy lies, was not known up to the year 1820, nor for several years thereafter; and that lands were claimed on the Maryland side under patents issued by the State of Virginia, and on the Virginia side, under patents issued by the State of Maryland. To this evidence,

thus offered without any statement of its connection with other proof to follow, or any proffer whatever of other evidence to show its relevancy to the issue to be tried, made by the appellant, the appellees objected, and the Court sustained the objection; and this is the ground of the first exception.

It is certainly a fundamental principle in the law of evidence, that it is always incumbent on the party offering proof, to show its relevancy to the questions at issue. It often happens, however, that proof wholly irrelevant *per se*, may be made relevant and admissible by connecting it with other evidence which is relevant; and, in such case, it is the duty of the party offering the evidence, not appearing of itself to be relevant, to accompany it with a proffer to follow it with such other proof as will make its relevancy appear; and if he fails to do this, he cannot complain that his proof is rejected by the Court. Here no such proffer was made, and it was utterly impossible, at that stage of the cause, to perceive the slightest relevancy of the facts proposed to be proved, to the issue in controversy. The Court was therefore right in rejecting them.

The appellant then offered in evidence a certain Land Office warrant, issued by the State of Virginia, and a patent granted thereon to John Hooker, by that State, dated the 2d of September, 1788, for thirteen hundred and eleven acres of land, described as, and supposed to have been located in Monongalia county, in the State of Virginia; and also offered a deed from John Hooker, the patentee, to John Hoye, dated the 15th of April, 1805, for the same land described in the patent, together with other lands, all described as located in Virginia.

He also offered to prove by a witness that he, the witness, knew John Hooker, and that he was in possession of the land described in the patent; but at what time, and for what length of time, is not stated, nor is the nature and character of the possession described by the witness. The bill of exception then proceeds to state, that the appellant proved by George Smith, that he is the executor of John Hoye, and that said

deed was found among the title papers of said Hoye, relating to these lands, after his death; and that said deed appears to be an ancient paper. To the admissibility of which evidence the plaintiff objected, and the Court sustained the objection. This is the second exception; and whether the ruling of the Court excepted to excluded all the evidence embraced in the bill of exception, or only that part of it detailed by the witness Smith, is somewhat doubtful upon the words employed in stating the objection upon which the ruling was made; but as it has been assumed in argument that it was intended to apply to the whole of the evidence stated in the bill of exception, we shall so treat it.

The object of this evidence was not, of course, to prove a valid paper title, paramount to that shewn by the appellees, but was to prove *color* of title, so as to make out such a matured claim to the land sued for, *by adverse possession*, as would defeat the right of the appellees, without the necessity of showing actual enclosures. And in determining upon the admissibility of this evidence, it becomes necessary to ascertain what is sufficient color of title to give an adverse character to the possession held under it, to the extent of the boundaries described in the title papers, and without reference to actual enclosures defining the limits of the possession.

Color of title, according to the most approved authorities, is taken to be such title as in appearance is good and sufficient, but which in reality is not good and effectual. The paper title, to give color, must be so far *prima facie* good in appearance as to be consistent with the idea of good faith on the part of the party entering under it; the enquiry being, whether there existed such an apparent or colorable title, under which claim and entry could have been made in good faith; the party believing his title to be good, and his claim well founded. If such color and good faith do not exist, the party's *seizin* must be confined to his actual possession, which, before the Act of 1852, ch. 177, must have been clearly indicated by enclosures. Adverse possession, by color of title, is

made out by the co-existence of two distinct ingredients; the first, such a title as will afford color; and secondly, such possession under it as will be adverse to the right of the true owner; and whether these two essentials exist are, in all cases, questions of law to be determined by the Court, though the facts upon which they are founded are for the finding of the jury.    Hence, when the facts exhibiting the title, and the possession under it, are shown, the Court will determine whether color exists, and the possession be adverse.    *Brad-street vs. Huntington*, 5 *Pet.*, 401; *Wright vs. Mattison*, 18 *How.*, 50; 2 *Smith's Lead. Cases, Amer. note*, 496.

Was then the title set out in this second exception sufficient in law to afford color to the alleged claim and possession under which the appellant defended?    We think not, for the reason that the title papers originating in Virginia, for land described as, and declared to be located within that State, are simply void as to titles within the limits of this State, and never being intended to operate upon lands beyond the limits of Virginia, they have nothing upon their face of a colorable character from which a party could suppose that his possession under them was justified.    We are bound to assume that the land in controversy lies within the limits of this State, as a patent has regularly issued for it; and, indeed, the defence taken concedes that it does lie within the limits of the State, and that the State had full power and jurisdiction over it. Such being the case, the title papers set out in this exception to pass land here are mere nullities, and cannot be allowed to have the effect even of giving color of title to a party who would otherwise be in the predicament of a mere trespasser. The Courts of this State cannot recognize such muniments, as affecting titles here, in any manner whatever; and especially not when sought to be used in conflict with a Maryland grant.

In the case of *Jackson vs. Ingraham*, 4 *John.*, 163, a question very similar to the present arose, on the effect of a grant of land by the French government, in Canada, prior to the

treaty between Great Britain and France, in 1763; the land being situated on Lake Champlain, within the province of New York. On defence taken under the grant, the Supreme Court of New York held, that they could not take notice of any title to land not derived from their own government, or the province of New York; and the defendant's possession under title derived from the French grant was not allowed to prevail. And in *Jackson vs. Waters*, 12 *John.*, 365, the defence was founded on the same French grant as the defence in the preceding case of *Jackson vs. Ingraham*, and the Supreme Court, deciding in accordance with its previous decision, said: "The lessor of the plaintiff produced and proved a regular title for the premises in question, under a patent to Elkanah Dean, dated the 11th of July, 1769;" and the only question in the case is, whether such *an adverse possession* was shown as to take away the right to recover in this form of action. The origin of the adverse possession set up by the defendant, is that taken by La Framboise, in the year 1763, by permission of Mackay, who claimed under a grant made by the French government of Canada to La Gauchetierre, prior to the conquest of Canada by the British.

"In the case of *Jackson vs. Ingraham*, (4 *John. Rep.*, 182,) it was held, by this Court, that we could not notice any title to land not derived from our own government; that grants from the French government were to be treated as nullities and absolutely void, and could not afford any legal evidence of title, which we could recognize. And, if such be the light in which these pretended titles are to be viewed, *the possession taken under these grants ought also to be considered as unavailing for any purpose. It cannot be deemed a possession in hostility to any private or individual right;* but, rather, as a controversy between the two governments, and in no way affecting individual claims, further than they were recognized and secured by the treaty of 1763." We do not deem further authority, as to the effect of the Virginia title papers, necessary, regarding the cases just cited, as amply supporting the

Baker *vs.* Lessee of Swan, *et al.*

conclusion to which we have arrived, and to which we should have come in the absence of all authority upon the subject.

But, apart from the insufficiency of the title to give color, was the possession under it, offered to be proved, of a character to show that it was adverse and sufficient, assuming the facts to be true, to defeat the title of the appellees? Clearly not, as we interpret the evidence contained in this second exception; and to that alone we are confined, as no other evidence was proffered with it.

The only evidence offered in connection with the patent and deed for the Hooker tract, described as located in Monongalia county, Virginia, was that of Jesse Childs, by whom it was proposed to prove that he knew John Hooker, the patentee, and that he was in possession of the land described as the Hooker tract in the certificate of the surveyor, and shewn on the plats, returned in the cause.

Now the character of the possession, to make it adverse, must appear to have been actual, hostile, visible, notorious, exclusive and continuous for at least twenty years before suit brought, in order to form a bar to the assertion of the legal title by the owner; and if these characteristics are not shown or proof offered from which they may be rationally inferred to exist, the evidence is legally insufficient. Here, none of these elements are shown to have existed in the possession of Hooker. Whether his possession was hostile and in the assertion of claim under title, or continued for one or twenty years, or was visible and notorious, or confined to one acre or extended to the whole tract, do not appear. The simple fact of his having been in possession, without any the least proof of its adversary character, was clearly inadmissible. The ruling of the Court in the second exception must, therefore, be sustained.

The third and fourth exceptions may be considered together; and supposing all the evidence set out in both of these exceptions, in relation to acts of possession, as well as the certificate and patent for " Ratler," and the bond of con-

veyance to the appellant, to have been excluded by the Court, (in regard to which, however, there would seem, from the language of the third exception, to be some doubt,) we utterly fail to perceive in what manner the appellant has sustained injury. For, on examination, we do not discover that the evidence, contained in these exceptions, presents a case different from that presented in *Hoye vs. Swan's Lessee,* 5 *Md.,* 237, where the question of the validity of the patent for "Ratler," and the character of the acts of possession of John Hoye and Daniel J. Hoye, on the land then and now in controversy, were considered and decided. It was there held that the grant for "Ratler" was ineffectual as against the title of the appellees, and that the acts of possession now relied on to establish a possession adverse to the right of the appellees being proved and relied on in that case, were, in their nature and character, wholly insufficient for that purpose. That was an action of ejectment by those under whom the appellees now claim, against Daniel J. Hoye, under whom the appellant defends in this case. The case was decided in this Court at the December Term, 1853, and in 1860, Daniel J. Hoye, who was held to have had no title whatever in the land sued for, made the bond of conveyance to the appellant, which has been introduced into this case, as showing the manner in which the appellant claims. But the appellant, not pretending to have a better or a different title than that acquired from Daniel J. Hoye, the bond of conveyance can make no manner of difference, and does not, in the least degree, strengthen his claim as against the appellee; for, as was said by the Court, in 5 *Md.,* 256, it necessarily follows, that if the appellant has no other title than by possession of the same land, in the same manner as it had been held by his predecessor, the imperfect possession of the latter cannot, when united to his own, make it adverse, continuous and exclusive as against the real owner. If, therefore, all the evidence contained in these bills of exceptions had been allowed to go to the jury without objection, the Court could

not have treated it otherwise, on the question being raised by prayer, than declared it wholly insufficient for the purpose for which it was offered, as was done in the case of *Hoye vs. Swan's Lessee,* 5 *Md.,* 237.

As we discover no error in any of the rulings excepted to, the judgment of the Court below will be affirmed.

*Judgment affirmed.*