# MARYLAND REPORTS.

## APRIL TERM, A. D., 1886.

JOHN P. SADTLER and PHILIP B. SADTLER, GEORGE T. SADTLER and JOHN P. SADTLER, Trustees *vs.* THE PEABODY HEIGHTS COMPANY OF BALTIMORE CITY.

*Adverse possession—Evidence.*

Adverse possession is an actual, hostile, notorious, exclusive and continuous possession.

In determining whether a person has an actual possession of property, its character and locality, and the uses and purposes for which it is naturally adapted, must be considered.

In May, 1884, an action of ejectment was instituted to recover the bed of an old road which had been closed by the Commissioners of Baltimore County in 1858. The defence to the action was an adverse possession of more than twenty years. The defendants to maintain this defence proved that at their own expense they opened Huntingdon avenue, which ran directly across the road, and by changing the grade and digging away the soil, they made the road impassable. Afterwards, in 1861, believing that as owners of the adjoining lots, they were entitled as such to the road-bed, they enclosed it with their lot, and as thus enclosed, they rented the lot and road-bed for several years for the purposes of pasture. Subsequently, in 1866, by order of the Circuit Court of Baltimore City, they rented it at a certain fixed yearly rent which has been paid by the tenant ever since. Besides, the defendants regularly paid the taxes on the property in dispute from the time of taking possession of it in 1861. HELD:

1                              v. 66.

That there was evidence tending to show an actual, hostile, notorious, exclusive and continuous possession by the defendants of the road-bed for more than twenty years.

APPEAL from the Circuit Court for Baltimore County.

The parcel of land sought to be recovered in this action, is described in the declaration as follows:

"Beginning for the same at the northeast corner formed by the intersection of two twenty foot alleys, one running parallel with Charles street avenue, and lying between said avenue and Maryland avenue, and the other running at right angles to said Charles street avenue, and intersecting the west side thereof, (being the first alley running east and west, north of Huntingdon avenue,) and thence easterly and along the north side of the secondly described alley five feet, to intersect what was once the southeast side of an old road now closed, (and known as "Carroll's Road,") thence northeasterly and along what was once the southeast side of said old road one hundred and fifty-five feet to intersect the south line of the lot formerly belonging to R. P. Bayley, now Bennett's; thence westerly and along said south line and at right angles to Charles street avenue forty-five feet, to what was once the northwest side of said old road; thence southwesterly and along what was once the northwest side of said old road ninety-eight feet to the east side of the alley first above described; thence southerly and along the east side of the alley aforesaid forty-eight feet to the place of beginning."

The case is stated in the opinion of the Court. The following plat will facilitate the understanding of the location of the property in dispute, the diagonal lines indicating the public road:

Sadtler *vs.* The Peabody Heights Company of Baltimore City.

*Exception.*—The plaintiff asked that the Court should declare as matter of law as follows :

1. That the plaintiff hath offered evidence legally sufficient to establish its legal title to, and right of possession of, the land and premises described in the declaration.

2. That the defendants have offered no evidence legally sufficient to establish in them, or any of them, adversary possession for the period and in the manner required by law, to the land, &c., described in the declaration.

The defendants offered the two following prayers :

1. If the Court shall find from the evidence that the defendants, or any of them, or those under whom they

claim, have had adverse, continuous and exclusive possession of the land in controversy, for twenty years or more before the institution of this suit, then the plaintiff is not entitled to recover, and the verdict must be for the defendants.

2. That as matter of law, the enclosure of the lands in controversy, and the payment of the taxes thereon, and the renting and leasing of the same, and the collection of the rents therefor, and the other acts of user and ownership by the defendants, as given in evidence, are sufficient to prove adverse, continuous and exclusive possession of such land on the part of the defendants.

The Court (YELLOTT, J.) granted the prayers of the plaintiff, and rejected those of the defendants. The defendants excepted. The verdict was rendered for the plaintiff, and judgment was entered for the plaintiff for the property described in the declaration. The defendants appealed.

The cause was argued before ALVEY, C. J., STONE, ROBINSON, IRVING, RITCHIE, and BRYAN, J.

*Frederick W. Story,* and *Charles Marshall,* for the appellants.

*Winfield J. Taylor,* for the appellee.

ROBINSON J., delivered the opinion of the Court.

This is an action of ejectment brought by the appellee to recover the bed of a road, which formerly ran through a tract of land called "Huntingdon," but which was closed by the Commissioners of Baltimore County so far back as 1858. The road ran diagonally across the tract, the right angle being formed by Charles street avenue on the east, and Huntingdon avenue on the south. The entire tract was divided many years ago into lots.

The road-bed now in controversy lies between two lots both of which belong to the appellants. The road having been closed, the appellants as such owners, would ordinarily be entitled to the bed of the road, because the title of the owner of land bounded by a highway as a general rule extends to the middle of the road. In a former appeal, however, between these same parties, the Court held that the title of the appellants did not extend beyond certain stone boundaries, which were planted in the presence of the grantor and grantees, at the time the lot was purchased, and that the fee in the road remained in Carroll, the grantor, under whom the appellee claims·

In defence to this action, the appellants claim title to the road-bed in question by *adversary possession* of more than twenty years. The case was tried before the Court below without the intervention of a jury, and the Court decided as matter of law, that the evidence offered by the appellants, was not *legally sufficient* to prove an *adverse possession* sufficient to bar the legal title of the appellee.

The question then is, whether there was any evidence from which the Court sitting as a jury, could reasonably find an *adverse possession* of the road-bed by the appellants for the period prescribed by the statute. And by adverse possession, we mean *an actual, hostile, notorious, exclusive and continuous possession.* In determining the question, whether one has an actual possession of property, we must take into consideration its character and locality, and the uses and purposes for which it is naturally adapted, for the possessory acts over an outlying and uncultivated piece of land, may be proved by acts of ownership somewhat different from what will be required in regard to land under enclosure and in actual cultivation. Here the property in dispute, was the bed of an old road long since closed, lying near the limits of Baltimore City, the value of which was mainly a prospec-

tive value for building purposes. And though the appellants were not bound to prove actual cultivation of the road-bed, they were bound to prove some definite and positive acts of ownership, such as one would ordinarily exercise over property of like character, and would not exercise over property to which he had no claim. Besides *actual* possession, they were bound to prove that such possession was under a claim of right hostile to the title of the appellee, and further that the acts of ownership exercised by them were public and notorious, such as were calculated to notify the appellee and those under whom it claims of the hostile invasion of their rights. We do not mean to say, they were bound to prove actual knowledge, but facts from which such knowledge might be reasonably inferred. Having thus offered evidence tending to prove an adverse possession begun, they were bound further to show that such possession was exclusive and continuous for the statutory period. If the possession was abandoned by them, or if from any cause they ceased to exercise acts of ownership and dominion over it, the possession of the appellee, the true owner, was restored.

Now, what is the evidence relied on in support of this adversary possession? In the first place, the old road was closed by the Commissioners of Baltimore County eight and twenty years ago. Thereupon the appellants at their own expense, opened Huntingdon avenue, which runs directly across the road, and by changing the grade and digging away the soil, they made the old road impassable. Afterwards in 1861, believing, as owners of the adjoining lots, they were entitled as such owners to the road-bed, they enclosed it with their lot, and as thus enclosed, they rented the lot and road-bed for several years to Blottenberger and Erdman for the purposes of pasture. Afterwards in 1866, by order of the Circuit Court of Baltimore City, they rented it to Jno. P. Sadtler at a certain

Sadtler *vs.* The Peabody Heights Company of Baltimore City.

fixed yearly rent, which has been paid by him to them ever since. Besides all this, they have regularly paid the taxes on the property in dispute from the time of taking possession of it, 1861, to the present time. Now the mere payment of taxes may not in itself be sufficient to prove an adverse possession, but when taken in connection with the open and public acts of ownership exercised over the property by the appellants, it is a pregnant fact to be considered in determining the adversary possession of the appellants.

It was pressed in argument, that the 'appellants took possession of the road-bed under the belief, that it belonged to them as owners of the adjoining land. This is true, but they took possession under a claim of right hostile to and inconsistent with the title of the appellee. Such a possession differs widely from the possession in the case of *Cresap's Lessee vs. Hutson,* 9 *Gill,* 276, and that class of cases in which one, through inadvertence or mistake as to the division line, encloses the land of his neighbor without any intention to claim title to the land thus enclosed as against the rightful owner. Here the possession by the appellants has, under a claim of right—a claim of title, we may say in one sense under a color of title as they supposed, but which was a defective title.

The possession however was none the less adverse and hostile to the appellee. There was evidence then we think tending to show an actual, hostile, notorious, exclusive and continuous possession of the road-bed for more than twenty years—a possession beginning in 1861, and continuing by the exercise of open and notorious acts of ownership from that time to the bringing of this suit. There is no proof they ever abandoned this possession, or in any manner ceased to exercise control and dominion over it. Nor is there any proof during all these years of adversary possession, that Carroll or any other person under whom the appellee claims, ever attempted to recover possession

of the road-bed or to interfere in any manner with the acts of ownership thus openly and publicly exercised by the appellants.

Such being our view of the evidence offered on the part of the appellants, the Court below erred in granting the plaintiff's first and second prayers, and in the refusal of the defendants' first prayer. There was no error in rejecting their second prayer, because it asked the Court to declare as matter of law that the several acts of ownership relied on by the appellants were in themselves sufficient to prove an adverse possession in bar of the legal title of the appellee. Whether these acts were sufficient to prove an adverse possession was a question in connection with other facts proved in the case, for the determination of the Court sitting as a jury.

For these reasons, the judgment will be reversed and a new trial awarded.

*Judgment reversed, and*
*new trial awarded.*

(Decided 24th June, 1886.)