# J. HENRY GULICK *vs.* JOHN T. FISHER.

*Easement of way by Prescription—Evidence—Injunction to Restrain Obstruction of Way.*

When plaintiff's claim to a right of way over defendant's land by prescription as appurtenant to his land is disputed, and plaintiff has another reasonably convenient outlet from his land, an injunction will not be granted to restrain the obstruction of the disputed way before plaintiff has established his right to the same in an action at law.

Plaintiff and defendant owned adjoining farms, both lying between two public roads. More than fifty years ago a mill was erected on defendant's farm, and a road leading to the mill from one of the highways was used by customers, and this road connected with another leading through plaintiff's farm from the other highway. The mill ceased to be operated many years ago, but the road through defendant's farm was used to some extent by persons in the neighborhood as a means of getting from one highway to the other. Plaintiff filed a bill alleging a prescriptive right to the use of the road through defendant's farm as appurtenant to the land owned by him, and asked for an injunction to restrain the obstruction thereof by the defendant. The evidence failed to establish clearly that the road had been used by plaintiffs' predecessors in title under a claim of right for twenty years. It was shown that gates and bars had been maintained on the road for many years, that interruptions in its use had occurred and that plaintiff had another outlet from his farm to another highway. *Held,*

1st. That plaintiff is not entitled to relief in equity since his title to the easement of way claimed as appurtenant to his farm, is not free from doubt and has not yet been established at law.

2nd. That since the plaintiff has another reasonably convenient outlet from his land, the circumstances of the case do not require interference by injunction to protect plaintiff from irreparable injury before the existence of the right of way claimed is determined in an action at law.

Appeal from an order of the Circuit Court for Prince George's County (MERRICK, J.) The defendant filed the following plat as an exhibit with his answer:

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*C. C. Magruder* (with whom was *Joseph S. Wilson* on the brief), for the appellant.

*Jos. K. Roberts* (with whom was *Chas. H. Stanley* on the brief), for the appellee.

JONES, J., delivered the opinion of the Court:

In this case the appellant filed a bill in equity in the Circuit Court for Prince George's County praying an injunction commanding the appellee to remove a fence with which the latter had obstructed a road running through the farm and premises of the appellee to the use of which the appellant claims a prescriptive right in himself and those under whom he claims.

The bill alleged that the appellant was seized of a tract of land of about three hundred acres situated about six miles from the city of Washington "the objective point (as the bill expresses it) for hauling produce and other articles to and from, not only" to him, "but to very many if not all the owners of real estate, truckers and tenants in that locality;" that the appellant and those under whom he claims, "from time immemorial," had been accustomed to use a road known as the "Mill Road" from this land leading through the land of the appellee "to haul produce and other articles of merchandise and traffic" to the city of Washington and to market, and to go to church and the postoffice; that the said road leads to the highway known as the "Alexandria Ferry Road" and to the road leading to Marlboro, the county seat of Prince George's County; that the appellant cultivated the usual crops of the neighborhood and engaged to some extent in trucking and market gardening, and until the obstruction thereof, of which he complains, had hauled his products over the said "Mill Road;" that about the 1st of April, 1898, the appellee closed up this road "by erecting a strong fence across the same," thus altogether preventing the use thereof by the appellant and shutting him off from access, over this road, to the aforesaid highways which he is now compelled to reach with his produce, and to get to mill, market, postoffice and church, by a much longer and a circuitous route over a bad road comprising a distance of three or four miles; that the appellant "has no other outlet to the highway except through lands over which he has no right of way except by permission of those owning the same, and should this permission be at any time refused (which is threatened) he will have no outlet from his farm and no means whereby to convey his produce to market" or to travel by vehicle of any sort to the highway unless he constructs, at great expense to him, "a new and very circuitous road over numerous hills, gulches, &c.;" that the appellee refuses to remove, and still continues the obstruction complained of, whereby the appellant is greatly inconvenienced and subjected "to much loss of time and money,"

and the value of his property is greatly deteriorated; "that for all this trouble, vexation, expense and injury to his freehold which he is entitled to enjoy the same as those under whom he claims from time immemorial, and to prevent multiplicity of suits at law" he claims he is entitled to an injunction.

The prayer of the bill, then, is " for an injunction commanding the defendant to forthwith remove the said fence placed by him across said mill road so that the plaintiff, his servants, tenants, employee's, &c., ingress and egress to his said farm may be the same as though never obstructed by the defendant or those acting for him, and from any other or further interference by the defendant (appellee), his tenants, &c., with the right of the plaintiff, his tenants, employees, &c., to the free use at all times of said obstructed road " and for general relief.

Upon this bill the plaintiff obtained a preliminary injunction, and the appellee filed an answer under oath and prayed a dissolution of this injunction. Appellee's answer admits that the appellant is seized and possessed of the tract of land or farm described in his bill as therein alleged; but denies that the appellant, or those under whom he claims, ever acquired a right of way over the land of the appellee as is asserted in the bill, or that he or they were ever accustomed to use the road mentioned therein as the appellant claims; and proceeds by its denials and averments to negative every allegation made by the appellant as ground for the relief sought. It concludes with a denial that the plaintiff had set forth in his bill such a case as entitled him to the relief prayed or any relief at all, and claimed for the respondent the same benefit of his objection as if it had been raised by plea or demurrer.

The answer was filed on the 15th day of July, 1898, and the case was set for a hearing, presumably on the motion to dissolve the injunction, on the 20th of the same month. On this last named day a general replication was filed and also a petition for leave to take testimony; and upon leave had a considerable volume of testimony was taken upon both sides and the case was brought to final hearing. After this the Court

below filed an opinion, the conclusion of which was " that the injunction heretofore granted will be dissolved and bill dismissed." The decree or order, however, which followed was that it was " adjudged, ordered and decreed that the injunction heretofore issued in this cause on the 11th day of July, 1898, be and the same is hereby dissolved with cost to the respondent." The appeal which brings the case to this Court was from this order.

It will be seen from the preceding summary of the bill that the relief by injunction is not prayed in this case as an ancillary but as a primary and substantive remedy, and it will be further seen that the answer of the appellee distinctly disputes and puts in issue the title of the plaintiff to the right of way in respect to which the plaintiff brought his suit. The Court, therefore, upon the case made up on the pleadings was not only asked to protect the plaintiff in the enjoyment of the right of way he asserted but to establish that right for him as well. Accordingly, a great deal of the evidence taken and returned in the case, especially on the part of the plaintiff, goes to the question made as to title of the plaintiff to the right of way involved in this controversy ; and the principal inquiry in disposing of the case below was as to how this question should be determined. Without stopping to consider for the present how far this inquiry was properly devolved upon a Court of equity in a proceeding of this character under the circumstances of this case, let us first see what was the character and effect of the proof upon the question made in respect to the plaintiff's title to the easement here claimed. In pursuing this inquiry it will not be necessary or useful to go into a minute examination of the testimony bearing upon it. It will be sufficient to state the conclusions resulting from a careful reading and consideration thereof. The appellant's claim is of a right of way acquired by prescription. A right of way is an easement appurtenant to an estate owned by the person in whose favor the easement exists. *Tiedeman on Real Prop.*, sec. 607. To establish a right of way by prescription the " evidence should show that the use and enjoyment of the

way had been continuous and uninterrupted for at least twenty years before the obstruction complained of; and that such user was adverse, that is under a claim of right, with the knowledge and acquiescence of the owner of the land; and the burden of proof is on the party claiming the easement." *Oliver* v. *Hook*, 47 Md., at page 311; *Moore* v. *Rayner*, 58 Md. 411.

The proof in this case shows that the appellant and appellee are owners of adjoining farms. Both of these farms lie between two public highways of Prince George's County, one of which is known as the Alexandria ferry road, and the other as the Allentown road. The road in controversy leads from the Alexandria ferry road through the farm of the appellee, and emerging therefrom runs into a road which leads on past the house, and partly through the farm of the appellant, into the Allentown road; so making a continuous road, when open and unobstructed, from one highway to the other. The farm now owned by the appellant was, in 1893, conveyed in trust to certain trustees by Louis C., Mary O. and Louisa J. Dyer, to secure a loan from the appellant to Louis C. Dyer. It was afterwards sold in proceedings under this deed of trust, and was first conveyed to the grantor named in the deed of the 25th day of July, 1896, appearing in the record, and then by the last mentioned deed to the appellant. The deed of trust of 1893 recites that the grantors therein are the only surviving heirs at law of Horatio Dyer. The appellant cannot show, and does not claim to have had or exercised, any user of the road in question himself, but he attempts to show that Horatio Dyer and his heirs exercised a user thereof of a character, and for a length of time, sufficient to establish a title to the easement claimed by him and to annex it as an appurtenance to the land to which he derived title under them. The evidence shows that there was formerly situated on the land now owned by the appellee a mill to which the people of the surrounding country resorted as customers; and that the road in question was used by the public generally in getting to the mill. Those of the customers who were the most convenient to the

Alexandria ferry road and came to the mill over that highway, would approach the mill by the road leading to it from said highway through the land now owned by the appellee. Those situated so as to make it more convenient for them to use the Allentown road in getting to the mill, went to it over the road leading from that highway partly through the land now owned by the appellant and past the house thereon, until it united with or ran into the road here in dispute and over this last road to the mill. It thus appears that the road in controversy had its origin and was brought into existence and use, not with reference to any purpose connected with the land of the appellant, but for a specific purpose connected with the land of the appellee. The evidence further shows that the road of which the road in question is a part, has been used to a greater or less extent by persons of the neighborhood as a convenient route to get from one of the highways, which have been named, to the other, and to get from points intermediate between them to the one or the other, and that among those who thus used it were the Dyers, the appellant's predecessors in title to the farm he now owns.

Before adverting to the testimony relied upon by the appellant as respects the user of the road by the Dyers, it may be remarked that it was said in the case of *Cox & Wife* v. *Forrest*, 60 Md. 74, "where one, * * has used a right of way for twenty years unexplained, it is but fair to presume the user is under a claim of right, unless it appears to have been by permission." As the Dyers used the road in question in common with others, which clearly appears, it cannot be said that their user is unexplained. The circumstances to which allusion has been made are sufficient to explain how this user may have related in the first place to the particular purpose which seems to have called the road into existence, and beyond this, was a privilege which they exercised in common with the community generally, and not the assertion of a claim to an easement as an appurtenance to their estate in the land. This it is useful to bear in mind as affecting the measure of proof required of the appellant as respects the user of the road in

question by his predecessors in ownership of his land. The connection of the family of Dyers with the land now owned by the appellant began according to the proof in 1844. At this time, and for many years thereafter, the road in question was used for the purposes of the mill, which seems to have been destroyed about or just before the time of our civil war. The appellant's proof as to the user of the road by those under whom he claims relates altogether, as to *acts* of user, to the time of the ownership of the land he now owns by the grantors in the deed of trust which has been referred to, in which they recite they are the heirs at law of Horatio Dyer (who appears in the proof as their father) and by their said father. One of the appellant's witnesses, Louis C. Dyer, testified to having seen a deed of the road here in dispute from some one of the former owners of the land of the appellee to some one of the former owners of the land of the appellant. A claim to the easement, here asserted, by deed, would be contradictory of the appellant's whole contention upon the allegations of his bill ; and the evidence in question could only have been offered to reflect upon the claim of the appellant that the user of the road by those under whom he claims was in the way of an assertion of a right. The evidence of the witness, however, did not identify the deed as to parties, terms or subject-matter, sufficiently to give the evidence the slightest probative force for any purpose, and it is not a matter for serious comment.

As to the user of the road in question by Horatio Dyer, the evidence does not show that he ever had the legal title to the land now owned by the appellant. It appears by reference in the deed of trust already referred to that this land was in 1844 granted to one Edward Dyer and was thereafter granted in 1873 by Henrietta H. Boone and others to Louis C., Mary O. and Julia F. Dyer. Two of these grantees were grantors in the deed of trust. During the time intervening between these two conveyances to Edward Dyer and to the trustees to secure the loan of the appellant, the evidence does not show what were the relations of Horatio Dyer to the property now owned by the appellant, nor to the parties who held

the legal title thereto; nor does it show, except inferentially, that he was even in possession of this land.    In the absence of such proof it is not perceived how any act of his in the way of user of the road in question could be taken as tending to annex it to the land of the appellant as appurtenant thereto.    Aside from this, however, none of the witnesses for the appellant, other than Louis C. Dyer, testified any more distinctly to the use of the road by the Dyers than to say they had known the Dyers to use it.    These same witnesses testified that others of the neighborhood had used it and the most of them, if not all, had used it themselves.    Louis C. Dyer's testimony as to the user of the road by his father was of too vague and general a character to give it much weight; and was more in the nature of the expression of opinion as to his father's claim of right to the road than of giving the acts of user from which inferences could be drawn as a basis of opinion.

We come now to the consideration of the evidence of user of the road in question by the heirs of Horatio Dyer.    There is no evidence tending to prove that any of these heirs, except Louis C. Dyer, used or claimed, or asserted any right to use the disputed right of way in connection with, or for the purposes of, the land owned by them, as these purposes are described in the appellant's bill of complaint; nor does it appear what authority Louis C. Dyer had to act for them or on their account in respect to the land they owned jointly with him.    Louis C. Dyer testified that he had known the road for fifty-one years and to his use of the same since the death of his father in 1865.    His evidence as going to show that the road in question was used under the claim that it was appurtenant to the land he in part owned, is not of a very convincing character; and is distinctly contradicted by the evidence of the appellee, who testified on his own behalf.    The appellee is younger than, and has not known of the road as long as, Dyer, but his evidence upon the point of user by the Dyers during the greater part of the time covered by Dyer's testimony is quite as specific, definite and satisfactory as that of

the latter. The evidence further shows that gates and bars have been maintained on the road at least for many years past. It further shows that there has been some dispute about the right of way over the road between the Dyers and the owners of the farm of the appellee at times and that interruptions of its use have occurred. The appellee testified to one very distinct and pronounced denial of the use of the road to Louis C. Dyer by Mr. Talbott from whom appellee derived title to his land. Dyer's attention having been called to this, he admitted a recollection of the occasion to which appellee's testimony referred and gave no satisfactory denial of the substantial accuracy of this testimony, but gave an evasive, vague and general explanation. Notwithstanding these disputes and denials of his right, it does not appear that Dyer ever undertook, or seriously contemplated, any legal steps to vindicate or establish the right that he claimed, although he now invests this disputed right of way with so much importance as an appurtenance to the farm he in part owned. Again, witnesses on behalf of the appellee testified to occasions upon which Louis C. Dyer disclaimed having a right to the road in question. One of these was the appellee himself, who testified that since the appellant acquired title to the farm he now owns by the sale under the deed of trust heretofore referred to, Dyer had told him that neither he, Dyer, nor the appellant had any right to the road in question and that he advised appellee to close the road. Dyer, in his rebuttal testimony, denies the disclaimers testified to by the other witnesses, but did not deny nor attempt to explain this last-mentioned testimony of the appellee.

It certainly cannot be said of the title of the appellant to the easement he here claims upon the state of proof in the record which has just been reviewed that it is clear and free from reasonable doubt. This would be sufficient of itself in the circumstances of this case for denying the appellant the relief here sought. In the case of *Amelung et al* v. *Seekamp*, 9 Gill & John. 468, the general principle is recognized and stated " that the writ of injunction is a most important remedy ; but it is

only used to protect rights which are clear, or at least free
from reasonable doubt;" and the case has been cited with
approval in many subsequent decisions of this Court and the
doctrine therein stated has been sactioned and applied.  Among
these it will not be necessary to refer to more than the late
case of *Clayton* v. *Shoemaker et al.,* 67 Md. 216, 219, 220.
The case of *White* v. *Flannigan*, 1 Md. 525 and *Shipley* v.
*Caples*, 17 Md. 179, cited and much relied upon on behalf of
the appellant are not at variance with the principle which has
just been stated.   In the case in 1 Md. the hearing was on
motion to dissolve the injunction on bill and answer and the
respective rights of the parties to the suit to the easement or
right of way which was the subject of controversy were evi-
denced by copies of certain deeds that were referred to in and
filed with the pleadings, and the Court found that by a proper
construction of the deeds and the admissions in the pleadings
the title of the complainant to the suit was "*clear.*"   The bill
in the case at bar very closely follows in its allegations those
of the bill in *Shipley* v. *Caples, supra.*   We may assume that
the case here is identical with that in respect to the allegations
upon which the claim to relief is based.   The two cases, how-
ever, as they present themselves in this Court are altogether
different.   The case at bar is here upon bill, answer, replica-
tion and full proof.   The case of *Shipley* v. *Caples* was before
the Court upon the bill alone.   That, of course, alleged the
complainant's title to the right of way with respect to which
the relief was there claimed ; and the Court said that at the
hearing of the case this title was to be assumed.

In addition to the defect in the proof as to the right of the
appellant to the road in question as an appurtenance to his
farm we do not find that it bears out the allegations of the bill
as to the injury and inconvenience resulting from the obstruc-
tion of the road of which he complains.   It appears from the
evidence that independently of the obstructions complained of
the road here in controversy was, at the time of the filing of
appellant's bill, on account of its bad condition, practically
useless for the more important purposes described in the bill

and that this condition had existed for a considerable time theretofore. In consequence of this the appellant was at that time using a road somewhat longer in distance in getting to the objective points stated in his bill, but a so much better road that his predecessors in ownership of his farm had been much accustomed to use it on account of its superior condition as compared with the road claimed through the appellee's land, especially of late years. The evidence does not show any serious threat upon the part of anybody to attempt to close the road so used against the appellant, but does tend strongly to show that no such threat, if made, could be put into effect as the use of the road by the appellant would seem to be a right and not a mere license or permissive user. This we are not to be understood as finally determining, but the proof upon this point and its effect as far as it goes is referred to as showing at least further doubt as to the equity of the appellant's bill.

In the case of *Amelung* v. *Seekamp, supra,* which like this was a suit to secure by injunction protection in the enjoyment of a right of way, the general doctrine was stated that preventive interference by injunction is restricted in cases of mere trespass and by analogy in cases of obstruction of right of way " to cases of irreparable mischief; to the prevention of a multiplicity of suits ; or to cases where peculiar circumstances imperatively demand the interposition of such a conservative remedy." And it was held in that case that the complainant who applied for the injunction to protect him in the use of his right of way had not in his bill shown cause for the injunction he sought upon the ground of irreparable mischief, because of a failure to allege that he had " no other *reasonably* convenient outlet from his mills " and that by the obstruction complained of " a valuable portion of the customers of his mills " would be " driven from them." Now the primary ground of injury upon which the appellant relies in this case as entitling him to an injunction is that he has from his farm no other outlet than the one through the land of the appellee to get to market, &c., and to haul away his

products, except one which he enjoys only by permission. The other injuries that he apprehends, which are described in the bill are consequences to flow from this want of an outlet from his farm. We have seen that the proof fails to sustain this ground of relief and shows not only that the appellant was at the time of filing his bill having the use of a "*reasonably*" convenient outlet from his farm to a public highway for the purposes indicated in his bill, with an apparent right to the use of the same ; but one that was often more convenient and available for those purposes than the one in dispute ; and on that account had been much used by the previous owners of his farm.

This case is thus brought within the principle of the ruling last referrred to in the case of *Amelung* v. *Seekamp*, where the absence of equity to sustain the application for injunction appeared on the face of the bill while here it is made to appear from the proofs in the cause. The doctrine that controlled the decision of the case of *Amelung* v. *Seekamp* is found stated in *Washburn on Easements*, page 747, where after saying that the owner of an easement besides his remedy at common law may also have redress in equity for an infringement of his right and an injunction to restrain the same, the author states that " if the title of the plaintiff in such case is in controversy the Court will not ordinarily interpose by way of injunction until the same has been established at law, unless the injury to be done by the threatened act is of a nature to require immediate interference in order to prevent great and permanent mischief." See also 1 *High on Injunctions*, sec. 8, and *Story's Eq. Jur.*, 2 vol., 9th ed., secs. 925*a*, 925*b*. We do not find in this case, upon the review made of it upon the pleadings and evidence, as appears from the foregoing views, anything to take it out of what is here stated to be the ordinary rule. It was not a case in which the extraordinary remedy by way of injunction was necessary or appropriate ; and the proper tribunal in which to try the right here asserted by the appellant was, under the circumstances of this case, a Court of law. The injunction granted by the Court below was properly dis-

solved. As the remedy by injunction was prayed for in the case as a primary and principal relief and the case was fully heard upon bill, answer and testimony it would have been proper for the Court below in dissolving the injunction to have dismissed the bill. *Kelly, Piet & Co.* v. *M. C. C. of Balt. et al.*, 53 Md. 134. The case will be remanded that a decree may be passed in conformity to the views of this Court herein expressed.

*Order affirmed with costs to the appellee*
*and cause remanded.*

(Decided January 16, 1901.)