SARAH STINCHCOMB *v.* REALTY MORTGAGE COMPANY, INC.

[No. 55, October Term, 1936.]

318

*Decided January 13th, 1937.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*R. Tilghman Brice* and *Robert Moss,* for the appellant.

*James F. Thrift* and *Guy B. Brown,* with whom were *McIntosh & Thrift* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

This case is a sequel to that of *Waring v. Stinchcomb,* 141 Md. 569, 119 A. 336, and is brought by a subvendee of the parties on one side of that case against the survivor

of parties on the other side. As was explained more fully in the earlier opinion, the original parties were owners of two farms fronting on Chesapeake Bay at the mouth of Magothy River, separated originally, and according to the descriptions in subsequent title deeds, by a waterway making in from the bay called Little Magothy River or Creek; and they were in dispute as to the effect of the closing of the original outlet of the creek by sand that had been washed up from the bay in the course of time, and which had caused a new narrow outlet to form along to the northwest, in front of the Stinchcomb property on that side, and between it and the washed-up sand beach. The plat reproduced in the report of that first case, 141 Md. 569, 579, 119 A. 336, will clarify this.

The fundamental question in dispute in that former case was whether the creek's outlet continued to divide the two farms on their water fronts after it had left its original side and so turned across the Stinchcomb front, or whether, on the contrary, it had then ceased to be the boundary, and the sand washed up in front of the Stinchcomb land had become attached to that land by accretion, notwithstanding the interposition of the creek's more recent outlet between. The decision was that the washed-up sand had become part of the Stinchcomb property in front of which it lay, irrespective of the interposition of the present outlet. In this second proceeding the first question argued is one of jurisdiction in equity to grant the relief prayed, assuming the existence of facts to support it in the proper forum. And passing that, the questions are: Did the first case settle the dividing line at the fence marked on the plat, and the removal of which gave rise to that case; if not, is a present judicial recognition of ownership in Miss Stinchcomb of land to the southeast precluded by judicial admission of the Stinchcombs in the former case, by estoppel, or by adverse possession of the beach front there claimed by Miss Stinchcomb; and if not, is the fence recently erected by her within or on her true boundary?

It appears that some years ago the two farms were

owned by father and son, the son, Alfred A. Stinchcomb, Mrs. Waring's father, on the southeast, and William Stinchcomb, his father and Mrs. Waring's grandfather, on the northwest. During those years Alfred A. Stinchcomb, the son, built a fence across the beach as marked on the plat; and the evidence of both Mrs. Waring, his daughter, and of George Stinchcomb, his brother, is that the fence was not erected to mark a boundary line, but merely to keep Alfred Stinchomb's cows from going over on the northwestern, or home, farm. It appears to have been worn down in time, and to have been replaced by Mrs. Waring after she had acquired the southeastern farm. It is to be taken, we conclude, as having been placed entirely without commitment on either side as to a division line.

Mrs. Waring, under the belief that the creek continued to divide the farms on the water front wherever its outlet might be found at any time, was in 1921 preparing to sell the beach built up in front of the northwestern farm, and with that in view removed the cow fence. And that action brought on the first suit by Miss Stinchcomb and her brother, then joint owners of the northwestern farm succeeding their father, to restrain interference with the fence. In their sworn bill of complaint they described it, and sought protection of it, as a division fence. This was explicitly alleged. And it was the first time, apparently, that the fence had been so described. It is clear, however, from the record of the first proceeding, introduced in evidence in this one, that the litigation did not proceed on an acceptance or denial of the fence as a dividing fence, but on the issue of the effect of the moving of the dividing line of record, the mouth of the creek. Witnesses on both sides testified that the fence was only a cow fence as stated; Miss Stinchcomb herself and witnesses called by her testified that thirty to thirty-five years before, the mouth of the creek had been about a hundred yards to the southeast of the fence, and had been shifted as far as the site of the fence twenty years before. The evidence convinced the chancellor then sitting that the mouth had been in recent times,

within living memory, further to the southeast, on the Waring side, and, adopting a survey ordered to locate it, he decreed that the boundary was at the line shown on the plat. That line, as it there appears, included only the beach in front of fast land on the northwestern farm. Despite the apparent disregard and departure from the claim of the Stinchcombs in their bill that the fence was a division fence, no amendment was made of the bill.

The decision of this court on appeal was, as stated, that, as the title of the Stinchcombs by accretion included the beach built up in front of their land, and the fence in dispute was at least no further to the southeast than that land and the old mouth of the creek, it should be preserved, either as a boundary fence or a fence on the Stinchcomb land, where they had a right to maintain any fence without interference. This court noted the evidence that the old mouth was still further to the southeast, but found that on the bill and the evidence before him the chancellor could not settle the boundary, and that the settlement of it by the decree was erroneous. On the remanding of the cause the chancellor signed a decree declaring that the accretion in front of the Stinchcomb land between the old and the new mouths was the property of the Stinchcombs, and enjoining interference with the fence on it. That decree is to be read as adhering to the limits of the decree on appeal, and therefore not as exactly defining the boundary, but as repeating the reason for restraining interference with the fence on the site occupied by it.

The effect of the decision was not fully understood by Mrs. Waring and others, but one of her attorneys at the time advised her that she was free to sell the front up to the site of the fence, and accordingly conveyances were made and ultimately brought whatever title Mrs. Waring might have had, if any, to some part of the beach on the southeast side of the fence into the ownership of the present appellee, and complainant. There was still some uncertainty as to the title, however, and while the question was under consideration by this latest purchaser, the

complainant, Miss Stinchcomb, surviving owner of the farm to the northwest, caused a fence to be erected on the line found by the chancellor in the first suit as that of the mouth of the creek and the division line. That fenced in the complainant's purchase as if part of the northwestern farm, and the complainant brings this second proceeding to remove a cloud on its title, or restrain a trespass upon its land. And on this second bill the present chancellor, after taking evidence, has concluded that the claim of Miss Stinchcomb to the line of her new fence cannot be sustained, principally because of the original claim in the bill of complaint in the first suit that the former fence was a division fence.

The question of jurisdiction, whether a bill to remove a cloud on the title in dispute or to restrain the alleged trespass, can be maintained at the suit of one not in possession, as the complainant here is not, the court concludes it is unnecessary to decide. The chancellor entertained jurisdiction on the authority of the decision in the former case, in which the court regarded the taking down of the first fence as within those trespasses entailing irreparable injuries, where full and adequate relief could not be granted at law, or where the trespass goes to the destruction of the property as it has been held and enjoyed, or where it will prevent a multiplicity of suits. 141 Md. 569, 583, 119 A. 336. It is found desirable in this second case to consider the meaning and effect of the former decision on the rights of the parties, and this involves some consideration of the merits of the continued dispute; and as on the merits the court finds that the complainant is not entitled to the relief it seeks, any possible distinctions in grounds of jurisdiction of the first suit and this need not be dwelt upon. But it is thought well to add that the court does not in that suit or in this relax adherence to the rule that when title is in dispute, and no irreparable damage from the delay in a suit at law is to be feared, the proper jurisdiction is at law. *Herr v. Beirbower,* 3 Md. Ch. 456; *Whalen v. Delashmutt,* 59 Md. 250, 254; *Clayton v. Shoemaker,* 67 Md. 216, 9 A. 635; *Gulick v.*

*Fisher,* 92 Md. 353, 365, 48 A. 375; *Oberheim v. Reeside,* 116 Md. 265, 274, 81 A. 590; *Baker v. Howard County Hunt,* 171 Md. —, 188 A. 223; *Homewood Realty Corporation v. Safe Deposit & Trust Co.,* 160 Md. 457, 466, 154 A. 58; Brantly's note to *Salmon v. Clagett,* 3 Bland, 125.

What has been said in explanation of the decision in the former case answers the contention that the case adjudicated the question of location of the boundary, fixing it at the old, or cow, fence. The decision did not undertake to fix the boundary exactly, or further than to hold that the Stinchcombs, owners of the northwestern farm, were within their rights in maintaining the fence where it had been.

As to their judicial admission, a clear pronouncement in previous pleadings between the parties or their privies, such as is found in the averment that the old fence was a division fence, inevitably puts a court on guard against upsetting possible proceedings on the faith of it. The previous litigation, as already stated, could not, in the view of this court, be said to have proceeded upon the admission as a ground of adjudication, but on the contrary, for the determination of the right to have the old fence maintained, investigated rather the location of the division line of record, the mouth of the creek. And neither in the present bill nor in the testimony on it is there any contention that the complainant or its predecessors purchased in reliance upon the admission, unless it should be that the advice given Mrs. Waring by one of her attorneys, that after the former decision she was free to sell land up to the fence as her northwestern boundary, be considered as evidence of reliance on the admission. We think it cannot be so considered without some definite evidence that the admission did figure in the attorney's opinion and the advice he gave. His familiarity with the litigation would seem to prevent an inference that it did. There is no evidence that the complainant has as yet actually parted with anything of value in the purchase of the property. Therefore, as the court sees it,

the effect the admission may have in this second proceeding must depend upon its having force in law irrespective of practical consequences from it. In decisions on the force of judicial admissions there may be found statements that appear to give a sanctity to admissions in pleadings and to consistency on the part of the pleader quite apart from any consequences of the admissions. See review in 14 *A. L. R.* 31, 54; *Tri-State Transit Co. v. Miller,* 188 Ark. 149, 65 S. W. (2nd) 9, 90 *A. L. R.* 1393, 1407; Bigelow, Estoppel (6th Ed.) 783. But this is not the rule. It would seem to be a palpably unreal treatment of the admission in this instance to give it standing now as a conclusive, binding factor in the controversy between the parties, and the fact tends to discredit a rule that would require it. An amendment eliminating the admission would doubtless have been permitted in the former proceedings without hesitation, and, this being true, it could not be laid down that there was any peculiar sanctity in a statement once made, and in consistency in the pleader's position. The authorities seem in accord. The admission is admissible as evidence in the second case, but it is not conclusive, unless by reason of its having formed the basis of an adjudication or other action on the faith of it; and, as observed, this fact does not appear. *Edes v. Garey,* 46 Md. 24, 41; *Mobberly v. Mobberly,* 60 Md. 376; *Scanlon v. Walshe,* 81 Md. 118, 132, 31 A. 498; *Nicholson v. Snyder,* 97 Md. 415, 55 A. 484; *Wilmer v. Dunn,* 133 Md. 354, 361, 105 A. 319; *Camden Sewer Co. v. Salisbury,* 162 Md. 454, 455, 160 A. 4; *Philadelphia, W. & B. R. Co. v. Howard,* 13 How. 307, 336, 14 L. Ed. 157; *Reynolds v. Adden,* 136 U. S. 348, 352, 10 S. Ct. 843, 34 L. Ed. 360; *Owensboro v. Owensboro Water Works Co.,* 243 U. S. 166, 174, 37 S. Ct. 322, 61 L. Ed. 650; *Oklahoma v. Texas,* 268 U. S. 252, 45 S. Ct. 497, 69 L. Ed. 937; *Smith v. Baker* (1873) L. R. 8 C. P. 350; *Roe v. Mutual Loan Fund* (C. A. 1887) 19 Q. B. D. 347; *Bigelow, Estoppel,* 790.

The adverse possession urged as precluding any claim of Miss Stinchcomb's to the southeast of the old, or cow,

fence, appears to lack sufficient support in the evidence. It could not be said there was adverse possession in owners of the southeast farm by inclosure with that fence, for it was not intended as an inclosure, and the evidence fails to show that it was standing for twenty years. On the contrary, it appears from testimony in the former proceeding that it had then stood for about twelve years, or since about 1911, and it did not continue in existence except for a short time beyond that. "It is the intent with which the possession is maintained, that gives it its character as adversary." *Waltemeyer v. Baughman,* 63, Md. 200, 204; *Bullock v. Staylor,* 125 Md. 699, 700, 96 A. 398; *Casey's Lessee v. Inloes,* 1 Gill, 430, 499. And physical possession of this site has never existed. It is a sand beach which, as the court understands, is still unoccupied and unused, and there has never been the visible, exclusive, and continuous possession adverse to the Stinchcombs which would be required to support a title to it by adverse possession. *Armstrong v. Risteau's Lessee,* 5, Md. 256, 280; *Peper v. Traeger,* 152 Md. 174, 181, 136 A. 537. There is evidence that a survey made for the Warings at the time of their acquisition of the property included all of the beach up to the present outlet of the creek. and that since that time taxes have been paid by the Warings on the whole surveyed farm without distinction of the extension in the beach, and by their vendees and subvendees since its sale. But the Warings acquired the farm in the year 1920, only seventeen years ago, not twenty years, And neither a record claim of title nor payment of taxes, without open, visible acts of possession, will suffice to support title by adverse possession. *Sadtler v. Peabody Heights Co.,* 66 Md. 1, 5, 10 A. 599; *Baker v. Swan's Lessee,* 32 Md. 355.

The court being unable, then, to find that an ascertainment of the rights of the parties according to their division line of record, so far as it may be ascertained, is precluded by anything in the past, comes to the conclusion in the end that the case is to be decided on the question whether the complainant, now appellee, has shown a right

to have the defendant's new fence removed or enjoined, or her pretensions to title so far judicially stopped, because the site is within the title of the complainant. On this question the evidence seems clearly against the complainant. Without reciting the testimony, it satisfies the court that within living memories the creek emptied into the bay by a straight outlet as far to the southeast as the fast land of Miss Stinchcomb extends, which is the line of the new fence, and this being accepted as true, it would not be possible to hold that the complainant, under the conveyances in evidence, acquired title to the land on which the fence stands.

*Decree reversed and bill of complaint dismissed, with costs.*