CHAS. OBERHEIM *and* BERTIE M. OBERHEIM, His Wife, U. GRANT DOWNS, ALLEN J. WILLIAR, and NELLIE J. WILLIAR, His Wife, and HARRY N. EHLEN *vs.* OLIVER H. REESIDE and JAMES E. HANE.

*Deeds: Construction. Alleys: Obstruction of—. Injunctions: Title of complainant. Equitable Estoppel.*

A grantor conveyed land by deed describing it as binding along an alley (laid out on the grantor's land), with the use thereof, in common with others, and with the use of another alley, *to be laid out by the grantor* (the second alley being necessary to the use of the first); the assignees of the grantor commenced the construction of houses on the space left for the second alley; grantees under mesne conveyances of the lot so conveyed, filed a bill for an injunction to prevent the completion of the houses and compel their removal; it was *held,* that the failure of the original grantor to make the alley serviceable as a thoroughfare did not impair the efficiency of the formal grant.                                    p. 273

It was competent for those entitled to the use of the alley to waive the covenant for its improvement and use it in its primitive condition.                                    p. 274

An alley is simply a narrow passageway; it may exist without any work of construction being done upon it.                                    p. 272

To "lay out," as ordinarily employed in such a connection, means the adoption of outlines and location and not the work of construction or improvement.                                    p. 273

The building of a house on ground through which the complainants are entitled to an alley way, necessary to make available to them the right to use another alley apurtenant to their estate, presents a case where there is no remedy by ejectment or trespass and is proper for redress in equity by an injunction. pp. 275-276

Where relief by injunction is sought as a determinative and not as an ancillary remedy, it is essential that the right of the plaintiff to the invaded estate should be free from every reasonable doubt or dispute. p. 274

When the title relied on is controverted and it appears that there is some ground for objection, a court of equity will not interfere, except for temporary protective purposes, until the question of legal right can be determined by a court of law. p. 274

When the legal title sought to be protected is not doubtful, there is no reason to require the parties to resort to a court of law for its adjudication. p. 274

When a trespass works a destruction of the estate in the character in which the complainant was entitled to enjoy it, a proper case is made for relief by injunction. p. 275

Mere silence as to rights of record does not create an equitable estoppel. p. 276

The doctrine, that where one stands by and sees another lay out money on property to which he himself has claim or title, and gives no notice of it, he can not afterwards in equity and good conscience set up such claim or title, does not apply to an act of encroachment on land the title to which is equally well known or equally open to the notice of both parties. p. 277

The principle applies only against one who claims under some trust, lien or other right, not equally open and apparent to the parties and in favor of one who would be misled or deceived by such want of notice. p. 277

*Decided June 23rd, 1911.*

Appeal from the Circuit Court No. 2 of Baltimore City (STOCKBRIDGE, J.).

The cause was argued before Boyd, C. J., Pearce, Burke and Urner, JJ.

*William G. Towers* and *Charles W. Dexter,* for the appellants.

*Alfred J. O'Ferrall,* for the appellees.

Urner, J., delivered the opinion of the Court.

The appellants are owners of renewable ninety-nine year leasehold estates in four lots of ground fronting on North avenue, in Baltimore City, indicated, respectively, by the numbers 21, 22, 25 and 26 on the following plat, which was used in the case for the purposes of illustration:

*Note:* A—B—C—D. Land described in lease from Elias Blackshere and wife to Marvin H. Murray. Being also lot thirdly described in deed from A. J. Ulman and wife to Elias Blackshere, recorded among Land Records of Baltimore City in Liber R. O., No. 1778, fol. 122, etc.

D—E. Alley referred to as extending northerly to Herbert Street from the northwest corner of lot, thirdly described, in deed recorded as aforesaid in Liber R. O., No. 1778, fol. 122, etc.

The lots in question are subdivisions of a parcel of land which was formerly owned in fee by Alfred J. Ulman, and which comprised all of the block shown on the plat except the two lots at the western end. On March 14th, 1899, Ulman conveyed in fee the southern portion of his land to Elias A. Blackshere, who subdivided it into the lots represented by numbers 3 to 26, inclusive. These were demised by Blackshere for the term of ninety-nine years, renewable forever, to Marvin H. Murray on January 24th, 1900, and the latter erected on the lots a row of twenty-four dwelling houses. In the deed from Ulman to Blackshere the rear line of the ground conveyed, running 333½ feet from the eastern limit of the church property shown on the plat to the western side of Monroe street, was described as binding on a ten-foot alley "here laid out" and the grant included the use of this alley "in common," "together with the use of any alley ten feet wide to be laid out by Alfred J. Ulman extending northerly parallel to Payson street from the northwest corner of the above lot to Herbert street." These alleys are outlined on the plat. The lease from Blackshere to Murray conveyed the subdivided lots, together with the improvements, rights and appurtenances, and the use in common of "an alley ten feet wide to be laid out by Alfred J. Ulman to Herbert street as mentioned in" the preceding deed. By *mesne* conveyances the four lots first mentioned, and the rights and appurtenances thereto belonging, were acquired by the appellants.

About the year 1906 the appellees became the owners of the northern portion of the Ulman land fronting on Herbert street. Their deed is not in the record, and the precise date of their acquisition of the property does not appear; but it is admitted that their title was derived through Ulman. In March, 1907, they began to erect upon the land a row of twenty dwellings. The westernmost house was located across and completely occupied the northern end of the space provided in the deed from Ulman to Blackshere for the ten-foot

alley extending to Herbert street. A fence was constructed by the appellees along the rear or southern line of their lots, and this was projected across the southern terminus of the alley space, which was then entirely obstructed at both ends. The appellants have sought in this suit to prevent the completion of the obstructions and to compel their removal.

It appears without dispute from the record that the alley extending from Monroe street on the east to the western end of the original Ulman land is too narrow to admit of the turning of teams, and that the outlet provided to Herbert street on the north is therefore essential to the use of the alley for its intended purpose as a means of access to the rear of the appellants' premises for garbage carts, delivery wagons and other vehicles. The bill of complaint accordingly charges that the structures in course of erection by the defendants have destroyed the easement to which the plaintiffs claim to be entitled under the grants referred to as appurtenant to their respective premises.

The answer of the defendants neither admits nor denies the allegations of the bill as to the derivation of the plaintiffs' title. It denies, however, the plaintiffs' right to the use of the ground in controversy for the purpose of an alley, and asserts that no alley has ever been opened or constructed through the property upon which the buildings of the defendants were being erected, and that their land was not subject to any rights of way.

There was some conflict in the evidence as to the extent to which the area provided in the Ulman deed for the alley extending to Herbert street had been used for that purpose. It was testified by several witnesses that this space though not graded or paved has been regularly traveled. by teams making deliveries and collecting material at the rear of the lots binding on the alley with which the one in controversy connected. There was other testimony to the effect that a part of the space intended for the alley had been obstructed for a number of years by deposits of building

stone, and that it had never in fact been opened or used as a
way. But it was shown by the witnesses for the defence that
prior to the erection of the defendant's row of houses the
whole of the ground lying between the southern tier of lots
and Herbert street was vacant and unenclosed, and that this
open space was customarily used by teams having occasion
to visit the rear of the plaintiff's premises and the other lots
fronting on North avenue. It was disclosed by the evidence
that the grade of the lots abutting on Herbert street, before
the improvements by the defendants, was from one to five
feet higher than that of the street. There appears to have
been some excavation and grading in connection with the
alley parallel with Herbert street, but there was no work of
this kind ever done upon the bed of the alley now in dis-
pute.

The main theory of the defendants is that the right of
those deriving title from Ulman to the use of the last-men-
tioned alley depended upon its being "Laid out," in the sense
of being constructed and opened as an alley, by the original
grantor of the easement. It is contended that the language:
"Together with the use of an alley ten foot wide to be laid out
by Alfred J. Ulman," amounted to nothing more than a per-
sonal covenant, binding the grantor alone, to establish a way
appurtenant to the land conveyed, and that this obligation.
not having been performed by the grantor during his owner-
ship of what was proposed to be the servient estate, is not
now enforceable against the present owners of the property.
This contention does not give due consideration to the import-
ant fact that the Ulman deed expressly *grants the use* of the
way as appurtenant to the land since acquired by the plain-
tiffs. If the phrase "to be laid out," upon which the defend-
ants rely, is to be construed as a covenant to make the defined
area serviceable as a thoroughfare, and if the contractual duty
was not actually performed, such a default could not impair
the efficacy of the formal grant of the use of the ground for
the purpose indicated. An "alley" is simply a narrow pas-

sageway. 1 *Words and Phrases,* 342. It may exist without any work of construction being done upon its bed; and an easement in an "alley ten feet wide" may undoubtedly be granted and be operative even though it be described as extending over ground not previously used for that purpose. It is perfectly apparent that the right thus conveyed in this case was one of great convenience and value to the property to which it was attached, and that it was absolutely necessary to be secured in order that the alley first mentioned in the grant should be available at all for its intended uses. It would not be a reasonable construction of the terms of the conveyance to hold that the distinct grant of the easement could be defeated by the neglect of the grantor to prepare the alley way for travel in accordance with his agreement.

· It is doubtless proper to conclude that the words "to be laid out by Alfred J. Ulman" as used in his deed imposed upon him some duty in reference to the improvement of the alley. The term "lay out" as ordinarily employed in such connections has been judicially defined to mean the adoption of outlines or location and not the work of construction or improvement. 5 *Words and Phrases,* 4037; *Hough* v. *City of Bridgeport,* 57 Conn. 290; *Foster* v. *Boston Park Commissioners,* 133 Mass. 321; *Gaines* v. *Hudson Co. Ave. Commissioners,* 37 N. J. Law, 14; *Zinc Co.* v. *City of La Salle,* 117 Ill. 417. In the present case the deed itself "laid out" the alley, within the meaning just stated, by clearly defining its location, and hence it is probable that there was something further contemplated to be done by the grantor in this regard for the benefit of the grantee and his assigns. But to hold that the easement must be lost altogether merely because some act was not performed that was designed to make it more serviceable would be contrary to the plain import of the conveyance and would be manifestly unjust. Upon the appellee's theory, if Ulman had died shortly after his grant, as he did seven years later, without having "laid out" the alley, it would have become thereby at once and

perpetually barred to the grantee regardless of the valuable consideration he had paid for its use. If the grantee had himself graded the alley, it could certainly not be said that his easement would still depend upon similar action by the grantor. It was undoubtedly competent for those entitled to the alley to waive the covenant for its improvement and to use it in its primitive condition. As they did in fact use the ground designated, or the adjacent land while vacant, for the purpose contemplated in the deed under which they claimed, it would not be a just disposition of the case to hold that they may now be deprived of their vested right by the present owners of the servient estate simply because a personal covenant of the common grantor to "lay out" the alley had not been performed.

In suits of this nature, where relief by injunction is sought as a determinative and not as an ancillary remedy, it is, of course, essential that the right of the plaintiff to the invaded estate should be free from any reasonable doubt or dispute. When the title relied upon is controverted, and it appears that there is some ground for the objection, a Court of equity will not interfere, except for temporary protective purposes, until the question of legal right can be decided by a Court of law. *Bernei* v. *Sappington,* 102 Md. 190; *Gulick* v. *Fisher,* 92 Md. 353; *Clayton* v. *Shoemaker,* 67 Md. 216; *Whalen* v. *Delashmutt,* 59 Md. 250; *Lanahan* v. *Gahan,* 37 Md. 105; *Amelung* v. *Seekamp,* 9 G. & J. 468; *Cherry* v. *Stein,* 11 Md. 27; *Chesapeake and Ohio Canal Co.* v. *Young,* 3 Md. 489. Such a situation is usually presented where the title involved depends upon or is affected by adverse user, as in each of the cases just cited. But when the legal title sought to be protected is not doubtful, there is no occasion to require the parties to resort to a Court of law for its adjudication. *While* v. *Flannigain,* 1 Md. 543. In the case at bar there is no dispute as to the execution and delivery of the deed granting the easement in question or as to the valid acquisition by the plaintiffs of lands to which it was intended to

be appurtenant. There is no issue of adverse user and no denial of right except upon a theory which is opposed to the terms of an express grant. We do not find here sufficient ground of objection to the plaintiffs' title to justify us in subjecting them to the expense and delay of a preliminary proceeding at law.

It is urged, however, that the injury complained of is not irreparable and that the plaintiffs have an adequate legal remedy by an action for damages. The record shows, as already stated, that the alley has been completely obstructed. It is entirely and finally destroyed for the purposes it was intended to serve, if the structures erected by the defendants are permitted to be maintained. The rule has been repeatedly declared that where a trespass works a destruction of the estate in the character in which the complainant was entitled to enjoy it, a proper case is presented for relief by injunction. *Baltimore Belt R. R. Co.* v. *Lee,* 75 Md. 600; *Schaidt* v. *Blaul,* 66 Md. 147; *Long* v. *Regan,* 94 Md. 464; *Herr* v. *Bierbower,* 3 Md. Ch. 458; *Davis* v. *Reed,* 14 Md. 157; *Shipley* v. *Ritter,* 7 Md. 413; *Shipley* v. *Caples,* 17 Md. 182; *Scully* v. *Rose,* 61 Md. 414; *Baugher* v. *Crane,* 27 Md. 41.

In *White* v. *Flannagan, supra,* where the plaintiff's right-of-way to a wharf over a street was obstructed by the defendant, it was said by the Court: "In judging of the application of the remedy by injunction, reference must always be had to the nature and character of the thing to be protected * * * by throwing obstructions over the street, so as to prevent a passage along its bed, it is just as much destroyed as if it were covered by a house; in the language of the authorities, it is irreparable mischief, because it destroyed it as *a street.*"

The encroachments in the case before us not only exclude the plaintiffs altogether from the use of the way directly affected but also render the connecting alley unavailable for the purposes for which it was designed. Under the conditions here existing it is plain that legal remedies would be

inadequate. The easement would not be recoverable in eject-
ment; *Callaway* v. *Forest Park Co.,* 113 Md. 7; *Nicolai* v.
*Baltimore City,* 100 Md. 579; *Canton Co.* v. *Baltimore City.*
106 Md. 69; and actions of trespass could not from the
nature of the case be expected to afford the .plaintiffs suit-
able redress.

The defendants charge that the plaintiffs were guilty of
laches in failing to assert their right to the alley until the
building by which it was obstructed had been nearly com-
pleted. It was proven that the erection of this particular
dwelling was begun in March and that a formal protest in
writing was not sent by the plaintiffs until June 27th, when
the house was under roof. It is to be gathered from the
testimony of one of the defendants that before this letter was
written the plaintiffs proposed that a space be left open at
the rear ends of three of the lots so that there would be room
for teams coming into the alley from Monroe street to be
turned around and driven back to the point of entrance.
When this proposal was made the ground was unfenced.
There were some negotiations on the subject, but they were
r\ot brought to a definite conclusion, and the defendants pro-
ceeded later to build a fence across the southern end of the
alley leading to Herbert street. The plaintiffs then sent
their letter demanding the removal of the obstructions. One
of the defendants testified that when this communication was
received about $1,000.00 had been expended on the house
at the northern end of the alley and that it was finished at
an additional cost of $200.00. It is insisted that the plain-
tiffs are estopped by their previous inaction to now demand
that the obstructions be removed.

It is a well settled principle that mere silence as to rights
of record does not create an estoppel. *Frazee* v. *Frazee,* 79
Md. 30. In *Schaidt* v. *Blaul, supra,* an alley was obstructed
by the erection of massive stone wall, and a stable, the former
having been finished and the latter being in course of con-
struction when the owner of an easement in the alley applied
for an injunction. The defence was interposed, among others,

that the plaintiff with full knowledge that the work was in progress and that large sums of money were being expended upon it by the defendant, made no complaint of any kind until it was completed. It was contended that by this course of conduct the plaintiff was estopped to allege that his rights had been violated. In overruling this contention, and affirming the decree below requiring the removal of the wall and stable, the Court quoted from *Casey* v. *Inloes,* 1 Gill 502, as follows: "The doctrine that where one stands by and sees another laying out money on property, to which he himself has some claim or title, and does not give notice of it, he can not afterwards, in equity and good conscience, set up such claim or title, does not apply to an act of encroachment on land, the title to which is equally well known, or equally open to the notice of both parties; but the principle applies only against one who claims under some trust, lien or other right, not equally open and apparent to the parties and in favor of one who would be misled or deceived by such want of notice."

In the case here under consideration the plaintiffs' rights were of record. The defendants had procured an examination to be made of the title to their land and must therefore have had actual as well as imputed notice of the easement they were obstructing. While they have offered evidence tending to prove that the alley had not been graded or used along its defined course, yet they could see that this was not really necessary so long as the adjacent ground remained vacant and unenclosed and thus afforded an unrestricted means of access for teams to the plaintiffs' lots. They were aware that in closing the area of the alley leading to Herbert street and in building a fence along the northern margin of the one extending to Monroe street the principal value and utility of the entire way would be destroyed. It seems clear to us upon the facts that the defendants are not entitled to rely upon the principle of equitable estoppel in their opposition to the plaintiffs' efforts to protect their easement. We

find in the case no superior equities in favor of the defend-
ants upon the strength of which they should be permitted to
continue the obstructions. The loss they may incur in the
removal of the building and fence they have erected in the
bed of the alley can not be supposed to equal that which the
maintenance of these obstacles inflicts upon the owners of the
twenty-four improved properties to which the right-of-way is
appurtenant. In our judgment the plaintiffs are entitled to
the relief by injunction for which they have prayed.

The learned Court below dismissed the bill without prej-
udice to an action at law; but as we have concluded that the
case is a proper one for redress in equity the decree will be
reversed and the proceedings remanded for a new decree in
accordance with this opinion.

> *Decree reversed and cause remanded to the
> end that a decree may be passed in
> accordance with this opinion; the costs
> to be paid by the appellees.*