## CHARLES S. HANSEL ET UX. *v.* WILLIAM C. COLLINS, ET UX.

[No. 70, October Term, 1941.]

*Decided January 13, 1942.*

The cause was argued before SLOAN, JOHNSON, DELA-PLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.

*Charles G. Watson* with whom was *Morgan C. Harris* on the brief, for the appellants.

*Walter C. Capper* for the appellees.

MARBURY, J., delivered the opinion of the Court.

The bill of complaint in this case was filed by the appellants in the Circuit Court for Allegany County on October 2, 1940, to enjoin the appellees from interfering with the use of a water pipe line by the appellants. To this bill an answer was filed, and also a cross-bill, in which the appellees asked that the appellants be enjoined from using the water, and a mandatory injunction be issued against them to cease such use and to sever the connections they had made with the water line. The appellants answered the cross-bill, testimony was taken, and the court below signed a decree dismissing the bill of complaint, and enjoining the appellants from using the water, and requiring them to remove any connections they had with the water line. From this decree the appeal herein was taken.

The testimony shows that in May, 1884, the property of the appellants and the property of the appellees at Rawlings, Allegany County, were both owned by a certain Lynn Hutson. On May 14, 1884, Lynn Hutson and his wife, Mary M. Hutson, conveyed to Mary Shaw the property which is now owned by the appellees. This deed was recorded on May 21, 1884. Five days after the date of this deed, and on the nineteenth day of May, 1884, Lynn Hutson conveyed to his wife, Mary M. Hutson, the property now owned by the appellants. In the first deed, in which the grantee of the second deed joined as grantor with her husband, there is no mention of any reservation of any rights in the property granted, it being an out and out conveyance in fee simple. The Shaw property, which is that of the ap-

pellees, was subsequently placed by Mary Shaw in the name of herself and her husband, Alexander Shaw, as tenants by the entireties. At her death it passed to Alexander Shaw, who died owning it. His will was probated on July 28, 1905. He devised the property to Mary S. Rawlings and Norma Rawlings for their lives, and to the survivor for her life. Remainders were left for one-half interest in the farm each to the children or descendants of each of the life tenants, living at the death of the survivor, with provisions that the children and descendants of one should take all in case there were no children or descendants of the other. Both of the life tenants married, Mary Rawlings becoming Mary Lanham and Norma Rawlings becoming Norma Wentz. Norma Wentz and her husband filed an equity suit against Mary Lanham and her husband and all the remaindermen for the sale of the property, and trustees were appointed. These trustees sold the property to the appellees, and conveyed it to them on March 12, 1940. The testimony shows that both of the life tenants left the property when they were married in 1906, but Mrs. Wentz returned there in 1930 and lived there until 1940, when the property was sold to the appellees. Both of the life tenants were living there in 1905 with their parents.

During the lifetime of Alexander Shaw, he constructed a two-inch water line from a point near the foot of a mountain on his property at Mill Run. This water line came down over his property to bring water to his mansion house, and in so doing it ran across a corner of the property of the appellants. In 1905 Mrs. Wentz was asked by Mrs. Hutson, the owner of the appellants' property at that time, if she could tap this two-inch line by a one-inch pipe line in order to provide water for the Hutson house on the property now owned by the appellants. Permission was given by Mrs. Wentz to Mrs. Hutson to do this verbally, and Mrs. Wentz, who testified in the case, stated that she

told Mrs. Hutson that she could have it as long as she lived. Mrs. Hutson died in 1912, and her property was sold through equity proceedings in 1920. A deed was made by the trustees appointed in such proceedings conveying this property to the appellants on June 9, 1921. The appellants' property touches Mill Run, which in some places appears to go through it, so that it is not cut off from water. The appellant, Charles S. Hansel, testified that when he bought the place the water from the one-inch pipe line was used in the house and the watering trough; that he built six houses, the first one about ten or fifteen years ago, and got water for these houses from this line, abandoning the connection with the watering trough, but also putting in a connection into his milk house. That aside from his own dwelling house and dairy house, there are nine or ten families in his houses being supplied with the water. The appellee, William C. Collins, testified that after he bought the property he told Mr. Hansel he would either have to disconnect his water or pay water rent, and that the appellant "allowed he could pay water rent," and bills were sent him, but never paid. This conversation took place during April, 1940, when Mr. Collins got his deed.

There is further testimony that the use of all this water by the appellants interferes with the flow to the appellees' dwelling house, although this is denied. There is also testimony produced by the appellants that the Hutson one-inch line was put there about forty-five years ago, but this is by a witness who has no way to fix it except his recollection. It is directly contrary to the testimony of Mrs. Wentz, who gave the permission to connect it in 1905, and to the testimony of the daughter of Mrs. Hutson, who said that the one-inch line was laid in 1905, and during the entire lifetime of her mother, water from it was only used in the house and in the watering trough. She also testified that the two-inch water line was laid from the mountain in 1895

or 1896 by Alexander Shaw, who had married Mr. Hutson's sister. A witness, William Leese, who was seventy-five years old the day he testified, said that he did the actual work of laying the pipe line for Major Shaw, who paid for it. That at the time it was built, there was no connection made for the Hutson place, but simply a two-inch water line from the mountain side through Mill Run to the Shaw mansion. The witness was unable to give even an approximate year as to when this was done. Another witness, Clara Hardy, who was sixty-one year old, remembered seeing Mr. Leese there digging, but she could not tell when it was, but supposed it was forty-seven years ago.

The immediate cause of the filing of the bill of complaint was the fact that the appellees had started laying a pipe line around the appellants' property, so as to have the two-inch water line entirely on the appellees' land. The appellants claim that the fact that this line, as now constructed, runs over a small part of their land makes them owners of it in common. The testimony, however, seems to show that at the time the line was built, the appellant's property was owned by Mrs. Hutson, and the appellees' property was owned by Major Shaw, and the line as then constructed was not used in any way to provide water for the appellants' property. It is not shown that Mrs. Hutson contributed in any way to the cost of laying the two-inch line. Neither is it shown that there was any permission, agreement or arrangement of any kind made, by which it was to go across the corner of her land. It was probably put there by mistake, but whether that is true or not, there is no evidence that the appellants or their predecessors in title were ever co-owners of the main line. At the time there was a unity of title in the two pieces of property there was no water line on it, although Mill Run was in some places the boundary line.

When Mr. and Mrs. Hutson conveyed the property

to Shaw, they made no reservation whatever in their deed of any right to use water from it. There was, therefore, no express reservation of an easement over the property of the appellees. The rule with respect to implied reservations is much more strict than that with respect to implied grants. In this case there can be no implied grant because the estate, which it is sought to make the dominant one, for whose benefit the easement is claimed, was the last one owned by the holder who had unity of title. The appellees' property was first granted to Shaw by the Hutsons, and afterwards the appellants' property was granted to Mrs. Hutson. The claim is that the property last conveyed by the Hutsons, that is, the appellants' property, has an implied easement over the property previously conveyed by them. To sustain this contention it must appear that there was an implied easement retained by the Hutsons for the benefit of the appellants' property. This court in the leading case of *Burns v. Gallagher*, 62 Md. 462, speaking through Chief Judge Alvey, laid down the principles by which easements by implication can be reserved in the following words: "For the principle is well settled, and it is founded in reason and good sense, that no easement or *quasi* easement can be taken as reserved by implication, unless it be *de facto* annexed and in use at the time of the grant, and it be shown moreover to be actually necessary to the enjoyment of the estate or parcel retained by the grantor. And such necessity cannot be deemed to exist if a similar way or easement may be secured by reasonable trouble and expense, and especially not if the necessary way or easement can be provided through the grantor's own property. In order to give rise to the presumption of a reservation of an existing easement or *quasi* easement, where the deed is silent upon the subject, the necessity must be of such strict nature as to leave no room for doubt of the intention of the parties that the adjoining properties should continue to be used and enjoyed, in respect to existing easements or *quasi* easements, as be-

fore the severance of ownership; for otherwise parties would never know the real purport of their deeds. If the grantor intends to reserve any right or easement over the property granted, it should be done by express terms, and not afterwards require a plain grant, it may be for full consideration, to be limited and cut down by any mere implied reservation of privileges over the property granted. It is only in cases of the strictest necessity, and where it would not be reasonable to suppose that the parties intended the contrary, that the principle of implied reservation can be invoked." This case has been followed by a number of cases among them being *Jay v. Michael,* 92 Md. 198, 48 A. 61; *Tong v. Feldman,* 152 Md. 398, 136 A. 822, 51 *A. L. R.* 1291; *Greenwalt v. McCardell,* 178 Md. 132, 12 A. 2d 522.

It will be observed that the reservation must be made at a time when there is unity of title, and if not expressly reserved in the deed, it must be shown that there is a necessity for its use by the property retained over the property conveyed. Several of these factors are missing in the present instance. At the time the Hutsons had the property there was no water line in existence. The property retained, and afterwards conveyed to Mrs. Hutson, was not dependent upon the appellants' property, conveyed to them by Shaw, for its water. There was no question of necessity, and it cannot be presumed under the circumstances that, having given an absolute deed, the grantors intended to reserve any rights over the property granted.

The appellants also claim that they have acquired a right to the use of the water from the two-inch pipe line through the one-inch pipe line by prescription. A prescriptive use to a right of way can be obtained if such use is continuous and uninterrupted for twenty years, and is adverse to the ownership of the land. The burden of proof is on the party claiming the easement. *Oliver v. Hook,* 47 Md. 301, at page 311.

As we have already stated, the testimony in this case shows that the connection was made in 1905, and was

by permission of one of the life tenants, who then had possession of the appellees' property. This permission was for the lifetime of Mrs. Hutson only. Mrs. Hutson, the permissee, died in 1912. The testimony does not show who occupied her property from that time until it was sold to the appellants by the trustees. The appellants' deed is dated June 9, 1921, and in that deed there is no mention whatever of any right to take water from the appellees' property or the appellees' pipe line. Assuming, but not deciding, that the use of the line from 1912 to 1921 was adverse, this use could not be tacked to the appellants' use, because it was not conveyed to the appellants by their deed. *Fleischmann v. Hearn*, 141 Md. 463, 118 A. 847.

The date of the public sale to the appellants', which is stated to have been on December 11, 1920, is the first date on which their adverse use of the water from the pipe line could possibly be claimed. The testimony shows that they were notified by the appellees, in April, 1940, that they could not use the water, unless they paid for it, and the appellant, Charles S. Hansel, agreed at that time to so pay. The record shows that the appellees filed their cross-bill to the bill of complaint on October 31, 1940. It appears clear, therefore, that the adverse use by the appellants of the water and of the line did not continue for twenty years before the filing of the appellees' claim for an injunction in this proceeding. The use by the appellants has not been continuous, adverse and hostile for the required period of years, and, therefore, they have acquired no prescriptive right to the use of the water and of the water line.

From these conclusions it necessarily follows that the appellees are entitled to have the appellants enjoined from using the water from the two-inch line. The decree of the lower court is, therefore, affirmed with costs to the appellees.

*Decree affirmed, with costs to the appellees.*