# LOUIS SACHS & SONS *v.* EDWARD L. WARD
## [No. 31, October Term, 1943.]

*Decided December 14, 1943.*

The cause was argued before SLOAN, C. J., DELA-PLAINE, COLLINS, MARBURY, GRASON, MELVIN, ADAMS, and BAILEY, JJ.

*Solomon Liss* for the appellants.

*Gordon S. Duvall* for the appellee.

MELVIN, J., delivered the opinion of the Court.

This is a suit for mandatory injunction brought by the appellee for the removal of the first story of a structure erected in 1915 in an alley adjoining the rear of his property, Nos. 410-12-14 South Hanover Street in Baltimore City. A permanent injunction is also sought against the placing of any further obstruction across said alley.

The original defendant was the Guilford Realty Company as the owner of Nos. 416-428 South Hanover Street, by which company an answer was filed stating, in substance, that this defendant "did not erect, does not use, and has no right of any nature whatsoever in or to the first floor structure underneath a bridge extending across the alley in question known as the 'Sutton Street alley'," and alleging that the property owned by said defendant, specifically the second floor of the structure across the alley, does not constitute any obstruction. Subsequently the sole users of the first floor structure, namely, Louis Sachs & Sons (hereinafter referred to as "Sachs"), were granted leave to intervene

as parties defendant and in due course filed their answer to the original bill of complaint. The issue thereupon became one between the plaintiff, Ward, and the intervenors, Sachs, who are the only parties to this appeal.

In this answer Sachs, after alleging title to the properties 106-110 West Barre Street, as shown on the plat filed in the case, further allege that they and their predecessors in title have been in actual, open, notorious and continuous possession and use of said building for more than twenty years, and have gained thereby adverse title and possession of the land covered by the said building.

The structure involved in this suit is in the rear of properties 416-22 Hanover Street and communicates directly with the building on West Barre Street. The former property is owned by the Guilford Realty Company (hereinafter referred to as "Guilford") and the latter by Sachs, both of which parties are successors in title to the City Baking Company. This company, while owner of both the Barre Street and the Hanover Street properties, erected the structure in 1915 to connect the two buildings. The first floor was of light wooden construction and, according to Mr. Duane R. Rice, president of the company, "was originally just a platform with a very light roof over it to protect men going back and forth, and I think originally there were awnings which were rolled up and down." Later on, the first floor became part wood and part corrugated iron, with a shed protruding from the building and a platform for loading and unloading. This was the condition during Sachs' occupancy of the Barre Street property, which they began about 1930 as tenants.

It is this first floor structure which alone is in dispute in this case, as the second floor is in a different category and entirely independent of the first floor from a structural standpoint. It is in the nature of a permanent bridge, of brick and steel construction, connecting the Barre and Hanover Streets buildings, and is fifteen

feet above the bed of the alley. Under the present ownership of the respective properties, the first floor is used exclusively by Sachs and the second-story bridge is used exclusively by Guilford.

Both owners acquired title from the same grantor—the Chestnut Farms-Chevy Chase Dairy Company—in 1941, but there is this significant distinction between the two conveyances in their relation to the bed of this alley, now also known as Sutton Street. The deed to Sachs not only does not grant any portion of the bed of it, but reserves from said conveyance an unimproved strip of ground, eighteen inches in width, to be used as a portion of said street. Guilford's deed, on the other hand, conveys the bed of this alley (or street) as to four of the seven lots included in the deed, and as to the other three lots, calls for a depth of 120 feet to the east side of "said twelve-foot alley," and does not include the bed thereof. Moreover, at the end of the description, the deed prescribes that "twelve feet of the first four above described lots of ground have been set apart on the west end thereof to be kept open as an alley, according to an agreement as recorded in Liber W. G. 105, folio, 207, between the heirs of Conrad Smith."

By virtue of these respective conveyances to Sachs and Guilford by their common grantor, there was a severance of the whole ownership, which left Sachs without any title, or color of title, to any portion of the bed of Sutton Street.

After full consideration of the case the chancellor decreed that the first floor structure, occupied and used by Sachs, constitutes an unlawful obstruction, and directed its removal within thirty days. The mandatory injunction that was granted does not apply to the second-story bridge, or permanent structure across said alley, owned by Guilford, as that is not held to be an obstruction to the free use thereof. From this decree Sachs have appealed and Guilford has not.

Of the several questions presented on this appeal, that raised directly by Sachs' answer becomes the controlling

issue. Their whole defense, as therein stated, is adverse possession, and as to this the burden of proof is upon them and not upon the plaintiff. It was incumbent upon the latter to prove, in the first instance, that Sachs were trespassers in the alley in question, but the burden shifted when this particular defense was raised. *Stuart v. Johnson,* 181 Md. 145, 28 A. 2d 837; *Hansel v. Collins,* 180 Md. 209, 23 A. 2d 686; *Oliver v. Hook,* 47 Md. 301, 311.

That the original placing of this first-floor structure across the alley was a trespass is free from doubt, and this is so whether the way now known as Sutton Street was, at that time (1915), a private or a public way. Every fact and circumstance relating to this alley, from the time of its creation, point to its rightful status as an open way and one never to be obstructed. The intention to thus establish it permanently was first expressed when it was laid out in 1809 by Articles of Agreement recorded among the Land Records of Baltimore City in Liber W. G. 105, folio 207, between the devisees of Conrad Smith. This is the same instrument referred to in Guilford's deed of 1941 conveying the identical property, and in both the public character of this alley is indicated by stating that it shall be "forever kept open."

This basic agreement of 1809 provides: "and for equality of division and to give equal advantages to the middle portions it is agreed between the parties that an alley of the width of twelve feet to run from Barre Street the full extent of said lots till it intersects M. Samuel Yoner's lot (agreeably to the plat) shall be laid off and forever kept open for the mutual accommodation of said parties and those who may hereafter hold said portions of ground aforesaid which alley none shall obstruct." The Yoner lot is the one now designated as No. 414 South Hanover Street, owned by appellee.

In February, 1839, the width of this alley was increased from twelve feet to thirteen and one-half feet by virtue of an agreement executed between the then

owners of the properties on Hanover Street and Barre Street. The language of that agreement likewise clearly emphasizes the intention to have this alley open and unobstructed always. The agreement states "that eighteen inches in front and running back the whole depth of the ground in said Bond described and adjoining the alley above mentioned should forever thereafter remain open and unobstructed and be and constitute a portion of said alley, * * *. And we do hereby for ourselves and our representatives covenant with the said Hooper, Conway and Armstrong and their representatives, that the alley hereinbefore first mentioned shall forever hereafter remain open as a public alley and highway between the parties."

While the alley, as originally laid out, went no farther than the Yoner lot (414 South Hanover Street), it is shown by the record that as far back as 1875 it had been extended to the rear of the properties now owned by appellee. In that year the deed to appellee's grantor, Bernhardt Meyer, called for a depth of "120 feet to the east side of an alley 12 feet wide newly laid out and communicating with Barre Street." Appellee's deeds to the adjoining lots, Nos. 412 and 410, likewise refer specifically to this twelve-foot alley communicating with Barre Street.

It is evident, therefore, that the respective original owners of lots 410 to 428, inclusive, South Hanover Street, created an alley which extended from Barre Street to, and including, the rear of lot 410. Of this entire alley 168 feet 11 inches came from the original agreement of 1809, confirmed and enlarged in width by the 1839 agreement. The extension of the alley to the rear of lot 410 came in later years, but prior to 1875, through grants by the owner or owners of the original Yoner lot.

As to the Barre Street property (106-8-10), now owned by Sachs, no part of the bed of the alley is included within its boundaries, but the title is "subject to leaving open a strip of land eighteen inches wide along the eastern line of the above lot, to be used as an alley hereto-

fore laid out, now known as Webster alley" (presently known as Sutton Street). This provision in the Sachs deed is in confirmation of the agreement of 1839, hereinbefore mentioned. It was in that agreement that the parties (the owners of the Barre Street and Hanover Street properties) stipulated that this alley, thereby increased in width from twelve to thirteen and one-half feet, should "forever thereafter remain open and unobstructed."

That was the record situation as to the alley when, in July, 1909, the City of Baltimore gave evidence of recognizing it as a public way by laying a cable in a conduit in the bed thereof, eighteen inches below the surface. The conduit or duct had been laid previously. The city installed two electric light poles and incandescent lights in this alley, and supplied the lights with current furnished by the city. One of these lights, of 250 candle power, is located north of the structure in question, and the other, of 60 candle power, south of it and about thirty feet in the alley from Barre Street.

Just when these lights were placed is not shown by the record, but it does appear than the cable to the 250 candle power light was run in 1914. The exhibits in the case show that this alley, as well as the intersecting one designated as Webster Court, lying to the north of the Sachs property, were paved first with cobble stones identical with the paving of Barre Street, and later with granite blocks, when the surfacing of Barre Street was changed to that material. These lights have continued in their present location, maintained and paid for by the City of Baltimore, and are there now.

In further recognition of the status of this alley as a public way the municipal records show that it was placed on the city's official plats as such and that its name was formally changed thereon from Webster Court to Sutton Street. The plat showing this particular designation was prepared in 1929 by the Property Location Division of the Bureau of Plans and Surveys of Baltimore City.

In addition to these acts by the city the status of Sutton Street is also indicated by the operation of Chapter 583 of the laws of 1908 (Baltimore City Charter, 1938 Edition, Sec. 1077). This statute provides: "Every private street, lane, alley or way now existing in the city of Baltimore, which for a period of one year from the passage of this Act shall connect with, open into, or lead to or from any public street, lane, alley or way of said city, and passage between which said private street, lane, alley or way, and said public street, lane, alley or way shall not be barred or obstructed by a wall, fence or similar structure erected along the dividing line between them, either without a gate or gates therein, or with a gate or gates which shall be kept closed at all times except when in actual use, shall be conclusively presumed to have been dedicated by the owner or owners thereof to public use as public highways, and may, at any time thereafter, be accepted as public highways, either by ordinance of the Mayor and City Council of Baltimore, or in any other manner in which a dedication of land to public use made in any other way, may be accepted."

It was during the year following the enactment of this statute (July, 1909) that the city took affirmative action in classifying this alley as a part of its system of streets by laying a conduit for electric current in the bed of it and at a point beyond, or to the north of, the location of the structure now in dispute.

Appellants contend that this Act of 1908 is unconstitutional, in that it imposes unreasonable and arbitrary restrictions and confiscates property without due process of law. However, the character of Sutton Street as a public way does not depend upon this statute alone. Whether it be unconstitutional or not—and it is not necessary to pass upon that question here—it has remained in effect ever since its enactment, and during that period of thirty-five years the city has performed certain acts in relation to this street, and it is these acts, together wth the manifested intention of the grantors

that it should be always kept open and unobstructed, which combine to clearly establish this way as a public, and not a private, one. *Smith v. Shiebeck*, 180 Md. 412, 419, 24 A. 2d 795; *North Beach v. North Chesapeake Beach L. & I. Co., Etc.*, 172 Md. 101, 191 A. 71; *City of Baltimore v. Yost*, 121 Md. 366, 88 A. 342; *Bloede v. City of Baltimore*, 115 Md. 594, 81 A. 67; *Lonaconing, M. & F. R. Co. v. Consolidation Coal Co.*, 95 Md. 630, 53 A. 420; *Mayor & C. C. of Baltimore v. Frick*, 82 Md. 77, 33 A. 435; *McCormick v. City of Baltimore*, 45 Md. 512.

Counsel for appellants, in his able presentation of the case, relies strongly upon *Mayor & City Council v. Gordon*, 133 Md. 150, 104 A. 536, which, like the case at bar, involved a blind alley or cul-de-sac. In that case the court, at page 153 of 133 Md., at page 537 of 104 A., said: "To sustain the city's claim and contention it must be found that there was an intent to dedicate to public use on the part of the owner of the property, and that such intent was clearly manifested, and that the same was accepted by the city." There the court held that the laying out of a street, without consent of the owners, upon a plat by commissioners authorized by statute to prepare a plan of the city, did not operate as a dedication, and concluded that, under the particular circumstances of that case, instead of a clearly proved intent to dedicate the alley to public use, it was limited to the use of the owners of the abutting land. However, in the instant case, the court finds that the circumstances here do show an intent to dedicate, as well as an acceptance. The point as to Sutton Street being a cul-de-sac is disposed of by the case of *Harlan v. Bel Air*, 178 Md. 260, 265, 13 A. 2d 370, where the court states: "It cannot be held that a street which has been clearly dedicated is not a public highway because it is a cul de sac."

With the status of Sutton Street thus determined, the defense of adverse possession set up by the appellant is unavailing. In Maryland, no such title can be main-

tained as against a municipal corporation, nor does prescription run against the public to defeat the right to use a public way. The same principle applies to the defense of abandonment, which is but a correlative of the other and has no independent strength under the facts of this case. *Cushwa v. Williamsport*, 117 Md. 306, 83 A. 389; *Libertini v. Schroeder*, 149 Md. 484, 132 A. 64; *Brady v. M. & C. C. of Baltimore*, 130 Md. 506, 101 A. 142. This is likewise the well-established rule of the common law, as pointed out by this court in *Ulman v. Charles St. Ave. Co.*, 83 Md. 130, 34 A. 366, 369, and cases therein cited.

In the Ulman case, *supra*, the quoted definition of the rule is that " 'the common right of way' cannot be lost by the attempted adverse possession of a private individual," and the court goes on to say that "it seems to us that it is such a rule as can be legitimately changed by legislation only, and not by judicial decisions."

In the absence of any such legislation there is no difficulty in applying the rule to the case at bar. With the burden of proof upon them to show adverse possession, as alleged, the appellants have presented a case on defense which not only does not sustain their postion, but brings it in direct conflict with well-settled rules of law. Apart from the question as to whether Sutton Street is a public or a private way and the law governing that aspect of the case, as above defined, appellants are confronted by another rule which is likewise adverse to them. It appearing from the record that their title (December, 1941) does not include any portion of the bed of Sutton Street, and that in that year there was a severance of the unity of ownership which had been vested in the common grantor of themselves and Guilford, appellants' only possibility of maintaining adverse possession would be by tacking on to their own use and occupancy that of their predecessors in title. This is precisely what this court had already decided cannot be done, the rule being that possession cannot be tacked to make out title by prescription where the deed by which

the last occupant claims title does not include the land in dispute. *Fleischmann v. Hearn,* 141 Md. 463, 118 A. 847; *Hansel v. Collins,* 180 Md. 209, 23 A. 2d 686; *Oliver v. Hook,* 47 Md. 301; *Oberheim v. Reeside,* 116 Md. 265, 81 A. 590; 2 *C. J. S., Adverse Possession,* Sec. 131.

In weighing the equities here it is also to be borne in mind that appellants not only never acquired title to any portion of the bed of Sutton Street, but were expressly charged with notice in their own title papers and by the land records that this alley was always to be kept open and unobstructed, certainly as to the parties to the original agreements. They were charged, too, with notice from the record that the bed of the alley was never owned by any of their predecessors. Therefore, when they found this first-floor structure across the alley, completely destroying its use for the purposes originally defined of record, they took possession of it with knowledge that it did not pass to them under their deed. Nor does the absence of any earlier complaint or protest by the appellee, as to the existence of the now disputed structure, render applicable here the principle of estoppel for, as pointed out by this court in earlier cases, it is well settled that mere silence as to rights of record does not create an estoppel. *Frazee v. Frazee,* 79 Md. 27, 30, 28 A. 1105; *Oberheim v. Reeside, supra.*

Before the date of their deed, appellants' occupancy as tenants since 1930 had been as mere squatters, at the will of the same grantor who subsequently, in 1941, severed his ownership of these two properties—416-28 South Hanover Street and 106-8-10 West Barre Street—and expressly did not grant to appellants any portion of the bed of the street, but did grant to another party, Guilford, the very portion upon which the said structure is located.

The case before the court is therefore narrowed to one where trespass was committed by the placing of this obstruction across the alley, in violation of the original covenants and in violation of the common right

to use it as a public street or alley. This trespass having been clearly shown, and the appellants not having met the burden of proof upon them to support their claim of adverse possession, they are liable to appellee for the removal of the obstruction, as decreed by the chancellor.

*Decree affirmed, with costs.*