KLEIN ET UX. *v.* DOVE ET AL.

[No. 157, October Term, 1953.]

 

*Decided August 5, 1954.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

Submitted on brief by *Rouse & Morton* for the appellants.

*Wilbur R. Dulin* for the appellees.

BRUNE, C. J., delivered the opinion of the Court.

This case presents a controversy between lot owners in a waterfront development. The plaintiffs-appellees are the owners of several interior lots; the defendants-

appellants own a lot which lies between a road to which the plaintiffs have access and the so-called "lake area" of the development, which fronts on the river, to which they desire access for recreational purposes—boating, fishing and bathing. On a duly recorded plat of the development a ten-foot road or right of way is shown along one side of the defendants' lot. This right of way was obstructed by the defendants and had been obstructed by them or by previous owners for some years before the institution of this suit.

The trial court held the plaintiffs entitled, in common with others, to use the lake area for the purposes above stated and to an unobstructed right of way over the strip between the defendants' lot and an adjoining lot and granted an injunction restraining the defendants from interfering with the plaintiffs' use of the lake area, requiring the defendants to remove obstructions from the right of way and restraining them from interfering with the plaintiffs' right of way. As an alternative to the above requirements with regard to the right of way, the decree permitted the defendants, within a limited time, to substitute another equivalent right of way over a part of their land on the other side of their lot. The defendants appeal from that decree.

The development is about 50 acres in area and occupies a peninsula between South River and Little Aberdeen Creek, in Anne Arundel County. About half of the lots have direct water frontage, a few, including the defendants' lot, occupy an intermediate position fronting on the so-called "lake area" and the remainder, including the plaintiffs' lot, are interior lots. Without using some-one else's property, access to the water can be had from the interior lots only at either of two piers—one on the east, the other on the west, side of the peninsula—or by the right of way between one of the waterfront lots and the defendants' lot, which abuts on the lake area, and thence across the lake area to the river.

The plat of the area was made by a surveyor in 1927 and was recorded among the land records of the county

in April, 1928. At that time the property stood in the name of one Gertrude L. Reed. The opinion of the Chancellor indicates that she was not the real owner, but that "Wild Rose Shores," as the development is called, belonged to Waggaman & Brawner, Inc., real estate brokers and developers, of Washington, D. C., whose name appears on the plat as sales agent. The plat shows the location of the various projected lots, of streets and roads, of three piers, and of the lake and lake area. Among the roads or ways shown on the plat is the ten-foot right of way here in controversy.

The plat bears this legend:

"The Streets and Roads laid out on this Plat of 'Wild Rose Shores' are not dedicated to the Public or to the Public Use, but the ownership and control thereof are specifically reserved by the owner, Gertrude L. Reed, her heirs and assigns, for the exclusive and mutual use and benefit of the owners of the lots abutting on said Streets and Roads. Subject, however, to the further condition that the Roadway from Line 'A' running in a southwest and southerly direction to the shore of South River, together with the Pier or Dock (all as shown on said Plat) are not dedicated to the Public or to the Public use, or to any lot owner or owners, but are reserved exclusively by and to the said owner, Gertrude L. Reed, her heirs and assigns, for such use or uses as she or they may subsequently determine."

As the Chancellor's opinion shows, shortly after the recording of the plat, Gertrude L. Reed conveyed the property, or such part of it as remained unsold, to Waggaman & Brawner, Inc., and that in 1931 the latter (apparently in pursuance of the reservation stated in the legend) conveyed the road at the southern end of the development south of Line A and one of the lots adjacent thereto and the exclusive right to use the pier at the end of that road, to a person not involved in

this suit. As the opinion further indicates, after conveying certain other lots Waggaman & Brawner, Inc. conveyed all of the remaining lots and the streets, roads, docks and piers to one Bivins, who, in turn, conveyed the same to one Howar, and that he conveyed them in October, 1938 to one Dora C. Hickey. The plaintiffs all claim under her grantees. Dora C. Hickey has not been made a party to this case.

The defendants acquired their lot, No. 32, from one Thomas P. Morgan, Jr. by a deed dated October 23, 1946. Morgan acquired it, according to a recital in his deed to the defendants, by a deed dated June 4, 1931. One witness testified that he had helped to build Mr. Morgan's house on lot 32 in 1927, had worked for him for some years thereafter and in 1928 had helped to build the fence which fences in the right of way shown on the plat along the east side of lot 32 as if it were a part of that lot. There is no explanation of the discrepancy in the dates of acquisition of the property and of building the house. There was also testimony to the effect that a prior owner of the development had orally agreed to shift the ten-foot right of way from the east to the west side of lot 32, and that a fence was built cuttiing off a ten-foot strip along the west side of lot 32 from the rest of the lot. This strip was not, however, open for use by the owners of interior lots; and at the trial the defendants were unwilling to agree to the substitute right of way being used by the plaintiffs.

None of the deeds in the defendants' chain of title purported to cover the right of way along the east side of lot 32. The appellants, in their brief in this Court, expressly state that they do not claim a good title by adverse possession. They did assert such a claim at the trial.

The primary question in the case is whether or not, as against the defendants, the plaintiffs have the right of access to the water by way of the lake area, which

for purposes of clarifying the issue might be better described as the boating and bathing area.

It seems clear that the plaintiffs bought their lots in reliance upon the recorded plat of "Wild Rose Shores." The appellants make a point of the absence of any designation of the lake area as a "community" area. The plat is rather scantily marked. What are evidently streets, roads or ways are not designated as such. An examination of the plat shows that they could not sensibly be regarded as anything else, and some of the wording in the "Notes" endorsed on the plat shows that this is what they are or are meant to be. Thus, the description of the garage area (for which there would be no reasonable use without roads) refers to a strip marked simply "20'" as "the 20' Road." Likewise, the reservation against dedication to the public speaks of the "streets and roads laid out on this Plat," and the more comprehensive reservation at the end of that note speaks of the "roadway" at the southern end of the tract. This same reservation also speaks of the dock or pier at the end of the roadway and denies dedication to the public or to the public use or to any lot owner or owners. Other streets and roads are stated not to be dedicated to the public or to the public use but to be reserved by the owner to the use of herself, her heirs and assigns "and to the mutual use and benefit of the owners abutting on said streets and roads." What are evidently piers are not designated as such.

Regardless of the absence of any such legend as "community beach" on the lake area, there is no readily perceptible reason for the ten-foot right of way between what appears to be the main road of the development and the lake area except to give the owners or occupants of interior lots on this waterfront development access to boating, bathing, swimming and fishing. There is a possibility that this right of way was also intended to give like access to the owners and occupants of waterfront lots having no satisfactory boating and bathing facilities on their own premises; but no question of

their possible rights is now presented, and no opinion is expressed thereon.

The situation is clearly and succintly stated by Judge Clark in his opinion in the trial court: "That the purchasers of the lots in this subdivision thought they were buying not only the right to use the roads and paths laid down on said plat, but, as well, the right to use the piers on the east and west sides thereof, and the Lake area, is, I think, certain. Everyone connected with the development contemplated them having those rights. If a purchaser of a lot in a waterfront development did not expect to get the right to use the water, few would purchase lots therein. After all is said and done, a waterfront development cannot be a waterfront development without a waterfront. It is true that the areas in question are not marked 'community property', or anything like that, but I do not understand that to be absolutely necessary. (18 Corpus Juris, p. 65; 26 Corpus Juris Secondum, p. 83.) If the intention otherwise appears, that is all that is necessary. Here, Mr. Carr did not even designate the roads and paths as roads and paths, but we all know that they are roads and paths. While he did not designate the Lake area and the piers as 'community property', we all know they must have been intended for the use of all lot owners reasonably needing the same for access to the water."

Such considerations are properly to be taken into acccount. *Baker v. Frick,* 45 Md. 337; *Pitts v. Baltimore,* 73 Md. 326, 21 A. 52. See also *Tiffany, Real Property,* (3rd Ed.), Vol. 3, Section 800.

Cases such as *Hawley v. Baltimore,* 33 Md. 270, holding that the grant to a purchaser of the right to use the streets shown on a plat filed by a vendor gives the right to the purchaser to use only the street upon which his land abuts and such other street or streets shown on the plat and owned by the vendor as may be necessary to reach a public street, have no application here. Nor are cases dealing with the dedication of parks con-

trolling, such as *Stover v. Steffey,* 115 Md. 524, 81 A. 33, or *Canton Co. v. Baltimore,* 106 Md. 69, 66 A. 679, 67 A. 274. *North Beach v. North Chesapeake Beach Land & Imp. Co.,* 172 Md. 101, 191 A. 71, was concerned chiefly with the effect, as between the owner of land and a municipality of the dedication of certain streets next to a beach. There was found to be no dedication of the beach which lay between the limits of the street as described and the edge of the waters of the bay which was roughly parallel to these streets and hence the municipality was held not to be entitled to build jetties on the beach.

The appellants contended here, as below, that the appellees have some access to the water via the piers on either side of the development and are entitled to no more. The evidence shows that these are not satisfactory places as bathing beaches. Even if they were, in view of the fact that the ways leading to them are ten feet wide and the piers, as shown by the plat, seem to be of the same width, the comment of the Supreme Judicial Court of Massachusetts in *Anderson v. De Vries,* 326 Mass. 127, 93 N. E. 2d 251, is pertinent, though perhaps conservative as applied to this case: "A space on the beach no wider than the way would hardly furnish a place adequate for the use and enjoyment of a large number of lot owners and their families and guests." To this should be added this apt comment in the opinion of the trial court which follows the above quotation: "It would be little comfort to a man to tell him that he might bathe from a 10-foot pier, but that if he puts his foot on the beach outside of said 10-foot strip, he would be a trespasser."

In this situation the reasoning in the case of *Williams Realty Co. v. Robey,* 175 Md. 532, 2 A. 2d 683, seems conclusive. As was there said:

"The relation of lots in a water front settlement to the water differs from that of abutting lots to a city square. There is naturally a greater dependence, if, indeed, we should not say that access to the water is

an essential, for in that access lies the purpose of the settlement and the purchase of lots in it. As Williams, testifying for the defendant, agreed, facilities for access to the water constituted the chief selling point. Therefore the case is concerned with a possible estoppel or implied covenant with relation to an incident almost, if not altogether, of importance equal to that of a bordering street. And when a buyer is persuaded, as in this case, by the assurances of restricted facilities in a community beach lying immediately across his front road or street, the advantages appear with sufficient clearness and certainty to have been sold to him as an incident, and in a court of equity repudiation must be prevented by injunction."

See also *Bacon v. Onset Bay Grove Ass'n*, 241 Mass. 417, 136 N. E. 813; *Carroll v. Hinchley*, 316 Mass. 724, 56 N. E. 2d 608; and an annotation in 7 A. L. R. 2d 607.

We also agree with the trial court that the actions of the appellants indicate that they have construed a deed to a lot in Wild Rose Shores, not fronting directly on the water, together with the recorded plat, as giving a right of access to the water at the lake area. The appellants' own lot is not a waterfront lot; it fronts on the lake area but not on the river, yet they use, and quite evidently consider themselves as entitled to use, the facilities of the lake area for boating, bathing and like purposes, which induce the purchase of lots in a waterfront development. This practical construction is persuasive against their denial of like rights to the plaintiffs.

The appellants seek to justify their exclusion of the plaintiffs from the lake area and its bathing beach in this way. First they say that a former owner of the development gave their predecessor in title a license to block off the way shown on the plat as a ten-foot strip between lot 31 and their lot, No. 32, and that their predecessor did so. Though they have now renounced any claim of title to the strip through adverse possession,

they next assert here, as they did below, that the right of way was abandoned.

A license to block off a way at one point in return for the establishment nearby of an equivalent way over land of the licensee cannot properly be considered an abandonment. Such an exchange would result in a rather slight change of location of the right of way, but would not be an abandonment of it. Still less could it fairly be regarded as an abandonment when the licensee failed to discharge his obligation to furnish the equivalent. Ordinary principles of the law of contracts would permit either rescission or a suit for specific performance.

Mere non-user of a right of way is not necessarily an abandonment of it. *Lichtenberg v. Sachs*, 200 Md. 145, 156, 88 A. 2d 450. The burden of proof of abandonment is on those who assert it—in this case, the defendants. *Sachs & Sons v. Ward*, 182 Md. 385, 35 A. 2d 161.

There is another difficulty with the appellants' contentions. Their possession of the right of way between lots 31 and 32 dated back only about seven years before the institution of this suit. To make out a sufficient period to extinguish the easement by adverse possession, they would have to tack their possession to that of the previous owner of lot 32 and occupant of the strip. This they cannot do. *Sachs & Sons v. Ward, supra.*

That case is also fatal to any contentions based upon the absence of protests by the plaintiffs or their predecessors about the blocking of the right of way. The appellants are charged with notice from the record that the bed of the right of way was never owned by their predecessor, and they took possession of it with knowledge that it did not pass to them under their deed. It was said in the *Sachs & Sons* case, which involved a structure in an alley: "Nor does the absence of any earlier complaint or protest by the appellee, as to the existence of the now disputed structure, render applicable here the principle of estoppel for, as pointed out by this court in other cases, it is well settled that mere silence

as to rights of record does not create an estoppel." See also *Oberheim v. Reeside,* 116 Md. 265, 81 A. 590.

The remaining contention of the defendants, which was raised by a demurrer which was overruled, is an alleged defect of parties, since the record holder of title to the beds of the streets and ways and to the lake area is not joined. The insubstantial character of such interest is, we think, apparent. The relief sought was against the defendants, and we believe that an effective decree can be, and was, entered without the joinder of the holder of that record title. Construing the decree, as we do, in accordance with the objectives stated in the bill of complaint, as determining rights and obligations only as between the plaintiffs and the defendants, and not as determinative of or as impairing any rights of the record title holder, we regard that person as only a formal or nominal party, and hence the record title holder need not have been joined as a party. *Miller, Equity Procedure,* Section 25.

*Decree Affirmed, with costs.*